**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 18, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP88-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016CF156

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

LEONEL ORTIZ,

  DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. KREMERS, Judge. *Affirmed*.

Before Lundsten, P.J., Kloppenburg and Fitzpatrick, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Following a jury trial, Leonel Ortiz was convicted of child abuse involving his then seven-year-old child. On appeal, Ortiz makes several arguments relating to a circuit court ruling prohibiting Ortiz from using, in his defense in this criminal case, juvenile court records pertaining to his child. We conclude that all of Ortiz's arguments are forfeited, and we affirm the circuit court on that basis. We also choose to address the merits of Ortiz's arguments and find the arguments lacking.

## Background

¶2 In January 2016, D.M., then seven years old, was living with his long-time foster mother, L.S., but was allowed overnight visits with his father, Ortiz. It is undisputed that, during that month, D.M. was struck, causing several small bruises to his head and neck near his left ear.

¶3 According to L.S., D.M. returned from a visit with Ortiz with the injuries. After L.S. observed the injuries, she sent pictures of those injuries via text message to Epiphany Williams, D.M.'s case manager. Williams then had a phone conversation with L.S. and indicated she would follow up with D.M. The next day, Williams met with D.M. at his school. D.M. showed Williams the injuries and told her that his dad slapped him because D.M. was taking too long to put his shoes on. D.M. later told a police detective that Ortiz, at Ortiz's house, had pushed D.M. down on a hard floor and slapped him.

¶4 Ortiz was charged with one count of physical abuse of a child, as a repeater.

¶5 Pre-trial, the State advised the circuit court that Ortiz had obtained or was in the process of obtaining juvenile court records "utilizing parental

authorization." The State argued that Ortiz was required to follow the procedure set forth in *State v. Bellows*, 218 Wis. 2d 614, 582 N.W.2d 53 (Ct. App. 1998). Ortiz did not dispute this proposition.

¶6     Ortiz subsequently moved to admit juvenile court records, which he alleged contained a record of an allegation by D.M. against his foster mother, L.S. The motion alleged that such records documented that, in 2013, D.M. alleged that L.S. pinched D.M. "behind [D.M.'s] neck and left a scar close to his ear, in the exact area that the bruising is to be alleged in our case." Ortiz hoped to introduce the juvenile court records at trial to support a defense theory that L.S., not Ortiz, inflicted the injury in January 2016.

¶7     Ortiz had copies of the juvenile court records at issue, apparently because of his status as a parent of D.M. The State did not contest the propriety of Ortiz having possession of the juvenile court records, but the State took the position that Ortiz could not use the records at trial without permission from the juvenile court.

¶8     Ortiz did not dispute the proposition that he needed juvenile court permission. Rather, the record reflects that Ortiz sought permission from the juvenile court, and his request was denied. Ortiz informed the circuit court at a pretrial hearing that he had a "*Bellows* motion ... scheduled to be heard next week ... in Childrens' court." On the first day of trial, Ortiz informed the circuit court that his *Bellows* motion had been denied by "Judge Perez," an apparent reference to a juvenile court judge. Ortiz related that Judge Perez concluded that the "evidence was relevant" but that Ortiz could "get it from other sources," such as the testimony of a social worker and, therefore, the "documents weren't necessary to ... [his] defense."

¶9    What followed was Ortiz's initial attempt to present live witness testimony as *Denny* evidence[1] and some limited further discussion of the juvenile court records.  Ortiz asked the circuit court to entertain a *Denny* motion with respect to a social worker, but the court observed that Ortiz had not subpoenaed the social worker for the start of the trial.  Ortiz then seemed to suggest that he could rely on juvenile court records as an offer of proof as to what the social worker might say.  The circuit court declined to look to the juvenile court records, apparently because of Judge Perez's ruling.

¶10    A short time later, the circuit court clarified the situation.  The circuit court explained that the juvenile court records could not be presented at trial because of the juvenile court ruling, but that there were three witnesses with knowledge of the alleged incident involving L.S. and D.M. who could be questioned during the trial.  The circuit court identified these witnesses as "the current social worker, the child, and the current foster mother [L.S.]."

¶11    Ortiz did not object to the circuit court declining to look at the juvenile court records, even for purposes of Ortiz's *Denny* motion.  For that matter, at no time prior to or during trial did Ortiz argue that he should not have been required to seek juvenile court permission to use juvenile court records in his criminal trial or that the circuit court should override the juvenile court's decision.

¶12    D.M., L.S., Williams, and the detective who conducted the interview of D.M. all testified at trial.  Ortiz pursued his strategy of pointing to L.S. as the

---

[1] *See* **State v. Denny**, 120 Wis. 2d 614, 623-24, 357 N.W.2d 12 (Ct. App. 1984) (adopting the "legitimate tendency" test, which asks "whether the proffered evidence is so remote in time, place or circumstances that a direct connection cannot be made between the third person and the crime").

4

person who inflicted D.M.'s injuries. Ortiz asked D.M. whether L.S. ever pinched or hit D.M. within the last year. Ortiz also asked L.S. whether D.M. had accused her of causing an injury to the back of D.M.'s neck, and L.S. agreed that D.M. had made that accusation.

¶13    We do not summarize the significant evidence supporting a finding that Ortiz caused the injury as charged. We simply note that the jury found Ortiz guilty of physical abuse of a child.

### *Discussion*

¶14    As discussed in the background section, part of the defense strategy at trial was to suggest that L.S., rather than Ortiz, struck D.M. in January 2016. The circuit court, relying on **Bellows** and the juvenile court decision denying Ortiz's request to use juvenile court records at his criminal trial, prohibited Ortiz from introducing those records as a part of his effort to shift blame to L.S.

¶15    In the sections below, we address only the arguments that Ortiz makes on appeal with at least some supporting legal argument.[2]   As to those arguments, we begin by explaining that all of them have been forfeited because none were timely made before the circuit court. We affirm on that basis. However, we nonetheless go on to address the merits of Ortiz's arguments to demonstrate that, so far as we can tell, none of his appellate arguments have merit

---

[2]   We do not address all of the statements in Ortiz's briefing that might be construed as an argument because many are found in single sentences unsupported by legal argument. For example, Ortiz states: "The circuit court never explained why Mr. Ortiz should not be allowed to use information already disclosed to him and in his possession." Ortiz may mean to suggest that the absence of an *explanation* is reversible error, but there is nothing more than Ortiz's bald statement and we do not address it.

and none would have made a difference even if Ortiz's trial counsel had made the arguments in a timely fashion.

### A. None of the Arguments Ortiz Makes on Appeal Were Preserved for Review

¶16 Ortiz's appellate briefing seems to suggest that, before the circuit court, he argued that he was not required to get juvenile court approval to use juvenile court records at his criminal trial or that he argued that the circuit court should override the juvenile court decision in order to protect Ortiz's right to present a defense. This is not true.

¶17 We have identified five arguments in Ortiz's brief-in-chief that are made with sufficient prominence to warrant our attention. Our review of the record confirms that none of these five arguments were made before the circuit court prior to or during the trial. Accordingly, we deem those arguments forfeited.

¶18 On the topic of forfeiture, Ortiz takes issue with the State's reliance on *State v. Polashek*, 2002 WI 74, 253 Wis. 2d 527, 646 N.W.2d 330. According to Ortiz, *Polashek* is "wholly irrelevant" because it "never once mentions forfeiture." Ortiz misunderstands both *Polashek* and forfeiture law.

¶19 It is true that *Polashek* does not use the term "forfeiture," but that is only because the *Polashek* court used "waiver" terminology, *see id.*, ¶25, terminology often used interchangeably with "forfeiture." *See State v. Huebner*, 2000 WI 59, ¶11 n.2, 235 Wis. 2d 486, 611 N.W.2d 727 (acknowledging that the rule of judicial administration known as the "waiver" rule might better be labeled "the 'forfeiture rule,' because it refers to the forfeiture of a right by silence rather than the intentional relinquishment of a known right").

¶20     And, regardless of the absence of the word "forfeiture," the State's reliance on **Polashek** is on the mark because the case repeats the well-established "general rule ... that issues not raised in the circuit court are deemed waived." **Polashek**, 253 Wis. 2d 527, ¶25.

¶21     Ortiz also makes the curious statement that "[t]he State never provides authority for the position that the defense must make every possible argument at the time of trial or suffer forfeiture of the issue." The State, however, does not assert that Ortiz was required to make every possible argument in order to preserve specific arguments. Regardless, the law is clear that Ortiz *was* required to make the specific arguments he now advances on appeal. Our supreme court has explained:

> The necessity of lodging an adequate objection to preserve an issue for appeal cannot be overstated. We have written on numerous occasions that in order to maintain an objection on appeal, *the objector must articulate the specific grounds for the objection* unless its basis is obvious from its context. This rule exists in large part so that both parties and courts have notice of the disputed issues as well as a fair opportunity to prepare and address them in a way that most efficiently uses judicial resources.

**State v. Agnello**, 226 Wis. 2d 164, 172-73, 593 N.W.2d 427 (1999) (emphasis added; citations omitted); *accord* **Huebner**, 235 Wis. 2d 486, ¶¶8-26 (forfeiture rule applied to a constitutional challenge).

¶22     We acknowledge that Ortiz raised at least one of his appellate arguments before the circuit court in his postconviction motion. But this effort was too late to preserve arguments that could have been addressed prior to or during the trial. Although we frequently state the forfeiture rule in terms suggesting that it applies only when arguments are raised for the first time on

appeal, *see, e.g., **State v. Caban***, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997) ("The general rule is that issues not presented to the circuit court will not be considered for the first time on appeal."), a more apt general formulation would stress that the forfeiture issue is directed at the *timeliness* of the objection. Thus, for example, even though the defendant in **State v. Saunders**, 2011 WI App 156, 338 Wis. 2d 160, 807 N.W.2d 679, raised an objection to an alleged sleeping juror in his postconviction motion before the circuit court, we deemed the objection forfeited for purposes of the appeal because the objection was not made until after the trial. *See id.*, ¶¶28-29. In **Saunders**, we repeated this quote from **Vollmer v. Luety**, 156 Wis. 2d 1, 456 N.W.2d 797 (1990): "'[R]equiring objections *at trial* allows the trial judge an opportunity to correct or to avoid errors, thereby resulting in efficient judicial administration and eliminating the need for an appeal.'" *See* **Saunders**, 338 Wis. 2d 160, ¶30 (emphasis added) (quoting **Vollmer**, 156 Wis. 2d at 11).

¶23 This is not to say that all objections of all types are forfeited if not raised at the first opportunity. For example, "[f]iling a postconviction motion is a timely means of raising an alleged error by the circuit court during sentencing." *See* **State v. Grady**, 2007 WI 81, ¶14 n.4, 302 Wis. 2d 80, 734 N.W.2d 364. But we discern no reason why the types of arguments that Ortiz raises on appeal have not been forfeited.

¶24 Accordingly, we conclude that all of Ortiz's arguments, including at least one he raised in his postconviction motion, were forfeited and, on that basis, we affirm the circuit court.

## B. Ortiz's Appellate Court Arguments

¶25    All of the arguments we address below relate to our decision in **Bellows**, 218 Wis. 2d 614. Thus, to provide context, we summarize **Bellows**.

¶26    In **Bellows**, a prosecutor obtained, from a juvenile court judge, juvenile court records relating to CHIPS petitions for three of Bellows' children. **Id.** at 619-20. The prosecutor obtained these records the day before the start of Bellows' trial on child neglect charges. **Id.** Over Bellows' objection, the circuit court permitted the prosecutor to introduce at trial the juvenile court records, which included an admission by Bellows that her children were in need of protection or services. *See id.* at 620-21, 626.

¶27    There was scant information in the **Bellows** appellate record indicating what procedure had been employed by the juvenile court when making its decision to release records to the prosecutor. *See id.* at 627. It was in this context that we reversed Bellows' convictions and adopted a procedure, found in **State ex rel. Herget v. Circuit Court for Waukesha County**, 84 Wis. 2d 435, 267 N.W.2d 309 (1978), for obtaining juvenile court records.

¶28    We explained in **Bellows** that provisions in WIS. STAT. ch. 48 should have been applied by the juvenile court and that it was the responsibility of the circuit court in the criminal case to examine the juvenile court procedure, once Bellows objected to that procedure. *See Bellows*, 218 Wis. 2d at 627-28, 634. Pertinent here, we held that a juvenile court should consider the child's best interest and the intended use by the requesting party, including "the relevance of the information to the cause of action [in which the requesting party is involved]; ... the probable admissibility of the information as evidence [in such action]; ... the efforts that have been made to obtain the information from other sources; and ...

any hardship to the requesting individual should the discovery order not issue." *See id.* at 630-31.

¶29     With this context in mind, we turn to Ortiz's arguments.

*1. Whether the Circuit Court Order Prohibiting Ortiz from Introducing Juvenile Court Records Violated His Sixth Amendment Right to Confrontation*

¶30     Ortiz contends that the order prohibiting him from using juvenile court records violated his Sixth Amendment right to confrontation because the order prevented him from using the records to impeach L.S., the key witness against him.  According to Ortiz, the United States Supreme Court in ***Davis v. Alaska***, 415 U.S. 308 (1974), "decided this issue" in favor of Ortiz.

¶31     Obviously, the ***Davis*** Court did not address the specifics of Ortiz's case.  Rather, we understand Ortiz to be arguing that some aspect of ***Davis*** constitutes a blanket rule requiring courts to allow defendants to use juvenile court records in criminal trials.  Ortiz, however, does not come close to demonstrating why ***Davis*** might be read as creating a blanket rule elevating a defendant's right to confrontation over the interests of juvenile court record confidentiality.  Rather, at best, ***Davis*** requires a balancing of interests.  *See, e.g.,* ***Stock v. Rednour***, 621 F.3d 644, 648-50 (7th Cir. 2010) ("well established that the law calls for a case-specific inquiry into a number of competing priorities," *id.* at 649); ***Ellis v. Black***, 732 F.2d 650, 656 (8th Cir. 1984) ("***Davis*** ... clearly mandates that a court balance the witness' fifth amendment privilege on one hand against the defendant's sixth amendment right to cross-examine on the other.").  And, as we explain elsewhere in this opinion, Ortiz represented to the circuit court that the juvenile court

10

weighed Ortiz's need for the juvenile court records when deciding whether to permit Ortiz to use the records in his criminal case.

### 2. Whether the *Bellows* Decision Is Expressly Limited to Situations In Which the Government Seeks Juvenile Court Records

¶32 As we have seen, the facts in *Bellows* involved a prosecutor who obtained documents from a juvenile court in the hope of using those documents against Bellows in a criminal case. *See Bellows*, 218 Wis. 2d at 618, 620. According to Ortiz, this is not only the context of *Bellows*, but an express limitation. Ortiz states that the *Bellows* decision is "explicitly limited" to instances in which the *government* seeks to use information in a juvenile court record. We disagree.

¶33 Ortiz points to the italicized language in the following quote from *Bellows*:

> We hold that *where the State seeks to use information* obtained from a juvenile file and an objection is made to the procedure that was employed to obtain the information, the trial court is under an obligation to determine whether there is record support for a finding that the juvenile court complied with the statutory guidelines and the considerations outlined in *Herget*.

*Id.* at 634 (emphasis added). We agree with the circuit court's postconviction observation that Ortiz's proffered interpretation of *Bellows* is "absurd based on the underlying purpose of the procedures" and the supreme court's *Herget* decision.

¶34 Although the *Bellows* language quoted above uses terms that correspond to the facts in that case, there is nothing in *Bellows* suggesting that our reasoning would not apply when the party seeking the release of juvenile court records is not the government. To the contrary, as the circuit court noted, the

procedure we adopted comes from a civil case, **Herget**, in which the requesting party was a non-governmental plaintiff. Our reliance on **Herget** and its civil context could not be more clear. We looked to the "comprehensive discussion" in **Herget**, a "civil action ... brought by the plaintiffs who alleged that Herget and another minor had vandalized their residence." *See **Bellows***, 218 Wis. 2d at 629. Thus, it is meritless to suggest that we meant to limit **Bellows** to situations in which the requesting party is the government.

¶35     We readily acknowledge that the question remains whether there is a reason **Bellows** should not apply to a defendant like Ortiz. According to Ortiz, there are two reasons. The first applies to defendants generally, and the second applies to Ortiz in particular because of his status as D.M.'s parent. We address those reasons in the next two subsections.

### 3. Whether **Bellows** Should Not Apply to Criminal Defendants Because Criminal Defendants Have Constitutionally Protected Confrontation Rights That Do Not Apply to Governments

¶36     Ortiz argues that **Bellows** does not apply to a criminal defendant seeking the release of juvenile court records for purposes of using such records to present a defense because the application of **Bellows** in that situation would interfere with such a defendant's confrontation clause protections. Ortiz does not, however, explain why the **Herget** factors are insufficient to deal with the topic.

¶37     As we explained in **Bellows**, under the **Herget** factors a party like Ortiz may provide information to the juvenile court explaining "any hardship to the requesting individual" that would result if the party's request was denied by the juvenile court. *See **Bellows***, 218 Wis. 2d at 630. We similarly went on to state that the "interests of the child must be weighed against *the need of the party*

12

*seeking the release of the information.*" *Id.* at 631 (emphasis added). Plainly, our ***Bellows*** decision provides a mechanism for defendants to bring confrontation clause needs to the juvenile court's attention and requires consideration of such needs.

¶38 In sum, Ortiz fails to persuade us that confrontation clause considerations should preclude the application of the ***Bellows*** procedure to criminal defendants seeking the use of juvenile court records. For that matter, as noted in our background section, statements made by Ortiz's trial counsel indicate that the confrontation clause issue was raised before and considered by the juvenile court.

### 4. Whether ***Bellows*** Should Not Apply Here Because Ortiz Is a Parent of the Child Who Is the Subject of the Juvenile Court Records

¶39 Ortiz argues that ***Bellows*** should not apply to him because he is the parent of the child who is the subject of the circuit court records. More specifically, Ortiz argues that ***Bellows*** should not apply here because the confidentiality statute on which ***Bellows*** hinges, WIS. STAT. § 48.78,[3] does not limit parents in the same way the statute limits law enforcement. Thus, Ortiz argues, nothing should have prevented Ortiz, as D.M.'s parent, from using D.M.'s juvenile court records for purposes of Ortiz's defense.

¶40 Ortiz points to language in WIS. STAT. § 48.78(2)(ag), the availability and disclosure limitations in § 48.78(2) do not apply to a "parent ... of the child who is the subject of the record," and contrasts that language with

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

language in § 48.78(2)(b), requiring a "law enforcement agency that obtains" juvenile court records to keep them confidential. According to Ortiz, far from requiring parents to keep juvenile court records confidential, the only limitation on a parent's use of juvenile court records is whether such use, in the words of § 48.78(2)(ag), "would result in imminent danger to anyone."

¶41 We are not persuaded.

¶42 Ortiz's discussion of this statutory language is superficial. Ortiz does not explain how the subsections he cites interact with what appears to be the heart of **Bellows** and **Herget**, namely, weighing the use to which such records might be put, including the needs of the requesting party, against the best interests of the child who is the subject of the records. *See **Bellows***, 218 Wis. 2d 630-31; ***Herget***, 84 Wis. 2d at 449-52.

¶43 As to Ortiz's assertion that the *only* limitation in the statutes on a parent's use of juvenile court records is whether such use "would result in imminent danger to anyone," his reading patently conflicts with the need to consider the best interests of children when interpreting the various provisions of WIS. STAT. ch. 48. *See **Bellows***, 218 Wis. 2d at 631 ("Under the Children's Code, the child's best interests are of paramount importance."); ***Herget***, 84 Wis. 2d at 449 ("Section 48.01(2), Stats. declares that it is the intent of ch. 48, Stats. 'to promote the best interests of the children of this state ....'").

¶44 Moreover, the apparent concern regarding "danger" that might occur as a result of the disclosure of information is the danger that flows from the disclosure itself. That is, for example, the danger that might arise if a party is angered by information disclosed to him or her. The subsection does not appear to speak to any later use of the juvenile court records.

¶45    We could say more, but our point here is that Ortiz's argument falls short because it fails to address the complicated interactions of various relevant provisions in WIS. STAT. ch. 48 and, in particular, how the isolated statutory phrases he relies on should be interpreted as they apply to the particulars of Ortiz's situation.

*5. Whether the Circuit Court Failed to Comply with Its Responsibility to Determine Whether the Juvenile Court Followed the Proper Procedure*

¶46    Ortiz appears to argue that the circuit court failed to comply with its responsibility, under ***Bellows***, to determine whether the juvenile court properly handled Ortiz's disclosure request.    Ortiz points to the following language in ***Bellows***:

> [T]he trial court is under an obligation to determine whether there is record support for a finding that the juvenile court complied with the statutory guidelines and the considerations outlined in *Herget*.

***Bellows***, 218 Wis. 2d at 634.    Ortiz, however, deceptively omits the lead-in to the above quote.    To prompt circuit court review, the omitted lead-in requires a particular type of objection:    "We hold that where the State seeks to use information obtained from a juvenile file *and an objection is made to the procedure that was employed* to obtain the information, the trial court is under an obligation ...."    ***Id.*** (emphasis added).

¶47    Here, Ortiz did not object to the procedure employed by the juvenile court and, thus, Ortiz did not trigger the circuit court's obligation to review the juvenile court's compliance with ***Herget***.

15

¶48 Moreover, our review of the record suggests no reason to suspect that the circuit court applied an incorrect standard. As should be clear by now, the comments of Ortiz's trial counsel indicate that counsel made the juvenile court aware of the circumstances in the criminal case and that the juvenile court took those circumstances into account. It is not apparent what more Ortiz could have hoped for.

¶49 Before leaving this topic, we choose to comment on an argument made by the State.

¶50 The State asks us to reject Ortiz's obligation-to-review argument because *Bellows* does not apply when a juvenile court decides to maintain the confidentiality of juvenile court records. That is, as we understand the State's argument, a circuit court has no obligation to review a juvenile court decision to maintain confidentiality regardless how flawed a procedure the juvenile court might have employed to reach its decision. While we do not definitively resolve the question, we explain why we do not find the State's logic persuasive.

¶51 The State relies on the sentence from *Bellows* that we have quoted twice above and now repeat once more:

> We hold that where the State seeks to use information obtained from a juvenile file and an objection is made to the procedure that was employed to *obtain the information*, the trial court is under an obligation to determine whether there is record support for a finding that the juvenile court complied with the statutory guidelines and the considerations outlined in *Herget*.

*Bellows*, 218 Wis. 2d at 634 (emphasis added). More specifically, the State relies on our use of the phrase "obtain the information," which the State construes as limiting the holding to juvenile court decisions to release information. However,

16

just as the use of the term "State" in the sentence above does not mean that we meant to exclude non-government actors, our use of the phrase "information obtained from" does not mean that we meant to restrict the application of ***Bellows*** to juvenile court decisions releasing information. Stated differently, it appears to us that the ***Bellows*** sentence no more limits ***Bellows*** to the release of information than it limits ***Bellows*** to requests made by the State.[4]

### *Conclusion*

¶52 For the reasons above, we affirm the circuit court.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] The State, citing ***Courtney F. v. Ramiro M.C.***, 2004 WI App 36, 269 Wis. 2d 709, 676 N.W.2d 545, asserts that the proper forum for the review of a juvenile court decision denying release of information is the court of appeals. We do not weigh in on whether Ortiz could have sought pretrial *appellate* review, rather than circuit court review. Rather, it is enough to explain why Ortiz has not persuaded us that a ***Bellows*** review was not a viable option.