SHIRLEY S. ABRAHAMSON, J.
¶ 51. (dissenting). At issue in the instant case is whether joinder of several criminal charges against the defendant, Luis Salinas — two charges of intimidation of a victim and one charge each of repeated sexual assault of a child, second-degree sexual assault with use of force, and second-degree sexual assault of a child — was proper under the criminal joinder statute, Wis. Stat. § 971.12(1) (2009-10).[1]
*41 ¶ 52. Construing Wis. Stat. § 971.12(1) "broadly,"[2] the majority opinion concludes that the sexual assault charges and the victim intimidation charges were properly joined because they "were '2 or more acts or transactions connected together or constituting parts of a common scheme or plan.' "[3]
¶ 53. I disagree with the majority opinion. I would affirm the decision of the court of appeals that joinder was improper. I write separately in dissent for three reasons.
*42 ¶ 54. First, the majority opinion's discussion of the criminal joinder statute, Wis. Stat. § 971.12(1),[4] is confusing and appears internally inconsistent.
¶ 55. The joinder statute sets forth four different bases for joinder: (1) the charged crimes are of the same or similar character; or (2) the charged crimes are based on the same act or transaction; or (3) the charged crimes are based on two or more acts or transactions connected together; or (4) the charged crimes constitute parts of a common scheme or plan. The first two bases are not relevant in the instant case and are not discussed by the majority opinion. Only the third and fourth bases are discussed by the majority opinion.
¶ 56. After noting that " 'connected together' and 'common scheme or plan' are separate and distinct prongs of the joinder statute," the majority opinion conflates the two prongs as well as analyzing them separately. See majority op., ¶¶ 32, 33, 37, 42, 45.
¶ 57. Second, I question whether the "broad" construction of the joinder statute adopted in Francis v. State, 86 Wis. 2d 554, 558, 273 N.W.2d 310 (1979), and applied by the majority opinion is warranted in the instant case. Both the relevant text of the joinder statute, Wis. Stat. § 971.12(1), and the overwhelming evidence that joinder of multiple charges prejudices *43 criminal defendants militate against a "broad" interpretation of joinder in criminal cases.[5]
¶ 58. Third, regardless of how Wis. Stat. § 971.12 is interpreted ("broadly" or otherwise), the majority opinion overstates the factual and legal connections between the sexual assault charges and the victim intimidation charges. I agree with the court of appeals' decision that the sexual assault charges and the victim intimidation charges are, at most, tangentially related. As a result, the majority opinion's conclusion that the sexual assaults and victim intimidation charges are "2 or more acts or transactions connected together or constituting parts of a common scheme or plan" is mistaken.
¶ 59. For the reasons set forth, I dissent and write separately.
i — i
¶ 60. I begin with the criminal joinder statute, Wis. Stat. § 971.12(1). Wisconsin Stat. § 971.12(1) states (in relevant part and with emphasis added):
*44 971.12 Joinder of crimes. (1) Two or more crimes may be charged in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan. . . .
¶ 61. As I stated previously, the joinder statute sets forth four different bases for joinder. The parties do not dispute that the sexual assaults and victim intimidation charges are not "of the same or similar character" and are not "based on the same act or transaction . . . ." Wis. Stat. § 971.12(1). Rather, the parties' arguments and the majority opinion's discussion focus on whether the sexual assaults and victim intimidation constitute " 2 or more acts or transactions connected together or constituting parts of a common scheme or plan." Wis. Stat. § 971.12(1).
¶ 62. The majority opinion's treatment of this language — "2 or more acts or transactions connected together or constituting parts of a common scheme or plan" — is confusing and appears to be internally inconsistent.
¶ 63. The majority opinion restates this language in several different ways. See note 3, supra.
¶ 64. Although the majority opinion states that " 'connected together' and 'common scheme or plan' are separate and distinct prongs in the joinder statute," the majority opinion begins its analysis by conflating the two, analyzing whether "the separate crimes were connected together by a common scheme or plan." See majority op., ¶¶ 33, 37. Later, however, the majority opinion analyzes each of these prongs of the joinder statute separately. See majority op., ¶¶ 42-46.
*45 ¶ 65. In sum, these differing approaches at different parts of the opinion are confusing and potentially inconsistent.
f 66. In my view, Wis. Stat. § 971.12(1) sets forth four bases for joinder including when two or more acts or transactions are connected together or two or more acts or transactions constitute parts of a common scheme or plan. These two bases for joinder do not have the same meaning, but the same fact situation may satisfy both bases.
II
¶ 67. Next, I question whether the "broad interpretation" of the joinder statute stated in Francis v. State, 86 Wis. 2d 554, 558, 273 N.W.2d 310 (1979), and repeated in the majority opinion and other cases without careful analysis is warranted in the instant case.[6]
¶ 68. Two factors militate against "broadly" interpreting the joinder statute in the instant case: (1) The text of the joinder statute; and (2) empirical evidence that joinder of multiple charges prejudices criminal defendants.
¶ 69. The text of Wis. Stat. § 971.12(1), the criminal joinder statute, does not state, as the majority opinion does, that the statute should be given a broad interpretation in favor of joinder. The legislature has *46 not instructed, as it sometimes does, how the text should be construed: broadly, narrowly, liberally, or strictly.[7]
¶ 70. Rather, the directive of broad interpretation of the joinder statute stems from a 1979 case, Francis v. State, 86 Wis. 2d 554, 558-59, 273 N.W.2d 310 (1979). In Francis, this court recognized that the joinder statute does not require joinder of two or more charges, and joinder of two or more charges does not require a joint trial on the charges.[8] The Francis court observed that " [a] broad interpretation of the joinder provision is consistent with the purposes of joinder, namely trial convenience for the state and convenience and advantage to the defendant."[9] The majority opinion agrees that a broad interpretation of the joinder statute fits these convenience and efficiency goals.[10]
¶ 71. In support of its "broad interpretation" of Wis. Stat. § 971.12, the Francis court relied on a 1961 article by Frank J. Remington and Allan J. Joseph, titled Charging, Convicting, and Sentencing the Mul *47 tiple Criminal Offender, 1961 Wis. L. Rev. 528, 538-39. Remington and Joseph stated that joinder of multiple charges generally promotes convenience and efficiency and can be beneficial to defendants. The traditional policy in favor of joinder is one of administrative convenience.[11]
¶ 72. Although Francis was correct that a broad interpretation of Wis. Stat. § 971.12(1) is consistent with the purposes of joinder discussed therein, namely trial convenience, judicial efficiency, and convenience to a defendant,[12] Remington and Joseph cautioned that "joinder of several offenses in a single proceeding may, under some circumstances, be prejudicial to the *48 defendant."[13] The defendant in the instant case in effect objected to the joinder of charges because joinder would enable the prosecution to introduce evidence irrelevant and unrelated to the other criminal charges.
¶ 73. The emphasis in Francis was on the value of joinder to the administration of justice. The language in Francis regarding a "broad interpretation" of the joinder statute makes sense when limited to the administrative convenience purposes stressed therein. Efficiency is an important value. Outside of joinder for pretrial purposes, however, we should not broadly interpret the joinder statute because the efficiency gained by joining multiple charges for trial may result in significant prejudice to the defendant. Interpreting the joinder statute according to its text, without the patina of "broad interpretation," avoids undue prejudice — another important value in criminal law.
¶ 74. We should not broadly interpret and apply the text of the four bases for joinder because, as recent empirical studies of joinder have demonstrated, join-der of multiple charges has a prejudicial effect on criminal defendants.
f 75. Empirical research, like other forms of evidence, can and should inform decision making (as it does elsewhere in the criminal justice system) in interpreting and applying the four bases for joinder. Indeed, Wisconsin has been a leader in evidence-based decision making.[14] Examples of empirical studies de *49 scribing the prejudice to defendants who face joinder of multiple charges are as follows:
• Edie Greene & Brian H. Bornstein, Nudging the Justice System Toward Better Decisions, 103 J. Crim. L. & Criminology 1155, 1163 (2013) (reviewing Dennis J. Devine, Jury Decision Making: The State of the Science (NYU Press 2012)):
[Jloinder of criminal charges biases jurors' judgments against a defendant because jurors attribute multiple instances of wrongdoing to a defendant's criminal disposition and confuse evidence relevant to multiple charges.
• Andrew D. Leipold & Hossein A. Abbasi, The Impact of Joinder and Severance on Federal Criminal Cases: An Empirical Study, 59 Vand. L. Rev. 349, 383 (2006) (emphasis added):
Joinder of counts has a significant impact on the outcome of trials. A defendant who stands trial on a single count is roughly 9 percentage points less likely to be convicted than defendants who face multiple counts.
• Andrew D. Leipold, How the Pretrial Process Contributes to Wrongful Convictions, 42 Am. Crim. L. Rev. 1123, 1142-43 (2005) (footnotes omitted):
*50 Joining charges or defendants in a single trial is a great resource saver, and it helps avoid the "scandal of inconsistent verdicts." The risks of joinder for the defense, however, are many. A defendant who is guilty of one charge but innocent of another may find it difficult to present separate defenses to separate charges, particularly if he wants to take the stand on the second count but not the first. More significantly, a jury considering an innocent defendant charged with multiple counts may infer a criminal disposition, or "may cumulate the evidence of the various crimes charged and find guilty, when, if considered separately it would not so find."
• James Farrin, Note, Rethinking Criminal Join-der: An Analysis of the Empirical Research and Its Implications for Justice, 52 Law & Contemp. Probs. 325, 330-31 (1989) (footnotes omitted):
[T]he studies are unanimous in finding that defendants do face a greater likelihood of conviction if offenses are tried jointly rather than separately.... A cumulative compilation of all the joinder research findings shows that the effect of joinder of offenses is robust; there is a significantly greater likelihood of conviction for defendants. These findings have been constant despite varying methodologies by the researchers.
• Kenneth S. Bordens & Irwin A. Horowitz, Information Processing in Joined and Severed Trials, 13 J. Applied Soc. Psych. 351, 369 (1983):
[JJurors in a joined trial situation cannot keep the two charges separate and arrive at independent verdicts.
*51 ¶ 76. These studies identify several reasons why joinder of multiple charges for trial leads to a significantly higher likelihood of conviction: Juries may be confused, may struggle to remember evidence going to numerous charges, may selectively remember only the evidence that confirms their ultimate conclusion, or may infer "that the defendant has a criminal personality type"[15] because of the multiple charges.[16]
¶ 77. Wisconsin case law echoes these concerns. "The potential problem as a result of a trial on joint charges is that a defendant may suffer prejudice since a jury may be incapable of separating the evidence relevant to each offense or because the jury may perceive a defendant accused of several crimes is predisposed to committing criminal acts."[17]
¶ 78. As a result, I conclude that a "broad" interpretation of the joinder statute is not justified in the instant case. Rather, the joinder statute should be interpreted using the interpretative tools ordinarily used in statutory interpretation.
HH h-H I — I
¶ 79. I turn now to the application of Wis. Stat. § 971.12(1) in the instant case. The majority opinion concludes that the circuit court properly joined the multiple sexual assault charges and the victim intimi *52 dation charges because they are "2 or more acts or transactions connected together or constituting parts of a common scheme or plan . . . ,"[18] Wis. Stat. § 971.12(1). The instant case involves a third set of charges, not at issue here, that involve domestic abuse.
¶ 80. In reaching its conclusion, the majority opinion relies on the following:
• V.G. was the alleged victim of both victim intimidation and sexual assault. See majority op., f 38.
• The last sexual assault allegedly took place on the same day as the domestic violence incident (to which the victim intimidation charge is related). See majority op., ¶ 38.
• "Salinas's domestic violence toward V.G. immediately preceded the [last] sexual assault." Namely, Salinas allegedly slapped V.G. on the date of the domestic violence incident. See majority op., ¶ 38.
• The victim intimidation charges and sexual assault charges "were close in time, involved the same people, and Salinas arguably engaged in one crime to prevent disclosure and punishment for another." See majority op., ¶ 38.
• The majority opinion asserts that " [t]he State presented evidence that all of Salinas's crimes constituted parts of his common scheme or plan to use threats, intimidation, physical and sexual abuse to maintain power and control over the woman with whom he lived, as well as her daughter, so he could break the law without risk of getting caught." Majority op., ¶ 46.
*53 ¶ 81. The majority opinion's recounting of the "connections" between the sexual assault charges and the victim intimidation charges is seriously flawed. I agree with the decision of the court of appeals. It carefully applied Wis. Stat. § 971.12(1) and concluded that joinder of the sexual assault charges and the victim intimidation charges was improper.
¶ 82. First, although the sexual assault charges and the victim intimidation charges do have one victim in common, V.G., the majority opinion ignores the fact that M.S. was a victim only of the victim intimidation.
¶ 83. Second, the majority opinion overstates the facts it claims connect the sexual assault charges and the victim intimidation charges by relying on a third set of charges — the domestic violence charges — that were not joined and are not at issue in the instant case.
¶ 84. Although the majority opinion correctly asserts that the last sexual assault allegedly occurred the same day as the domestic violence incident (which, in turn, led to the victim intimidation charges), V.G. alleged that Salinas sexually assaulted her dozens of times over a period of two and one-half years. Even if the last sexual assault incident were connected to the victim intimidation charges (through the domestic violence incident that is not at issue in this case), that single incident does not connect 2.5 years of sexual assaults to the intimidating phone calls. The intimidating phone calls were made nearly six months after the last of the sexual assaults allegedly occurred and one month before the sexual assaults were reported.
¶ 85. Likewise, the majority opinion overstates the scope of the alleged victim intimidation. Although the majority opinion correctly states that Salinas made hundreds of phone calls from jail to M.S. and V.G. while awaiting sentencing on the domestic abuse *54 charges,[19] the majority opinion conveniently omits the fact that only a handful of such calls were actually completed.
¶ 86. Third, the sexual assault charges and the victim intimidation charges were not based on the same act or transaction or on two or more acts or transactions connected together. No connection existed between the jail phone calls and the sexual assault charges.
¶ 87. With no factual support whatsoever, the majority opinion asserts that "Salinas arguably engaged in one crime to prevent disclosure and punishment for another."[20] As the court of appeals put it, " [t]here was no connection between the jail phone calls and the sexual assault allegations. The coercive phone calls were related only to sentencing in the domestic abuse case. Indeed, the sexual assault allegations and charges did not arise until after the domestic abuse case sentencing hearing had concluded."[21]
¶ 88. Simply put, the only support for the majority opinion's assertion that Salinas made the intimidating phone calls in an effort to prevent disclosure of and punishment for the sexual assaults is the majority's speculation about Salinas's motives.
¶ 89. Fourth, the majority opinion makes the unsupported assertion that " [t]he State presented evidence that all of Salinas's crimes constituted parts of his common scheme or plan to use threats, intimidation, physical and sexual abuse to maintain power and *55 control over" M.S. and V.G. "so he could break the law without risk of getting caught."[22]
¶ 90. No evidence was presented that Salinas had a common scheme or plan to intimidate and control M.S. and V.G. The only "evidence" of such a scheme is the offenses themselves and the majority's unsupported inferences and conjecture. As the court of appeals put it, " [i] t appears the State may believe it was appropriate to join the cases because the victim intimidation and sexual assault allegations generally demonstrated Salinas's character trait of being manipulative. If so, that does not satisfy the joinder requirements of [Wis. Stat.] § 971.12(1)."[23]
f 91. I agree with the court of appeals. Neither the State nor this court can justify joinder under Wis. Stat. § 971.12(1) by speculation and conjecture.
¶ 92. Moreover, I agree with the defendant and the court of appeals that the circuit court's decision that it was correct as a matter of law under Wis. Stat. § 971.12(1) to permit joinder of the sexual assault charges and the victim intimidation charges against Salinas was prejudicial to the defendant. Improper joinder is presumptively prejudicial, and the State must rebut the presumption of prejudice by proving the error was harmless.[24]
¶ 93. The State argues that any error in joining the sexual assault charges and the victim intimidation charges against Salinas was harmless because (1) the evidence of Salinas's guilt on the sexual assault charges was overwhelming; and (2) the evidence of the *56 domestic abuse incident would have been admitted in a separate trial as contextual " other acts" evidence.[25]
¶ 94. I disagree with the State's arguments.
¶ 95. First, the evidence of Salinas's guilt of the sexual assaults was not overwhelming. As the court of appeals put it, this was "a classic 'he-said, she-said' case," in which there was no physical evidence or third-party witness reinforcing V.G.'s allegations.[26]
¶ 96. Second, in assessing "other acts" evidence, we ask whether (1) the evidence is offered for a permissible purpose under Wis. Stat. § (Rule) 904.04(2); (2) the evidence is relevant under Wis. Stat. § 904.01; and (3) the probative value of the evidence outweighs the potential prejudice or risk of confusion.[27]
¶ 97. Even assuming for the sake of argument that the evidence of the victim intimidation charges (and domestic violence) was relevant and offered for a permissible purpose, the potential prejudice and risk of confusion far outweigh the probative value. V.G. alleged 40 to 50 sexual assaults over a period of two and a half years. The fact that one of the alleged sexual assaults occurred on the same day as the domestic violence incident (which in turn led to the intimidating phone calls — all of which occurred after the last sexual assault and before the sexual assaults were reported) *57 is simply not sufficiently probative to outweigh the substantial risk of prejudice to Salinas.
| 98. In sum, I would affirm the decision of the court of appeals.
¶ 99. In closing, I note that the court of appeals' decision in the instant case was an unpublished per curiam decision. When the court granted review in the instant case, I wrote separately, in a comment appended to the order, noting:
The Wisconsin Court of Appeals Internal Operating Procedures explains that per curiam opinions do not involve "new or unsettled questions of general importance."
I write to urge the court to keep in mind Attorney Michael S. Heffernan's cautionary comment at § 23.14 in his book entitled Appellate Practice and Procedure in Wisconsin (6th ed. 2014): "[There is] considerable discrepancy in the quality of the petitions [the Wisconsin Supreme Court] grants. To control its calendar [in fear of being inundated] the court may deny arguably meritorious petitions and then may end up granting petitions for little apparent reason other than filling its calendar."
¶ 100. This court's criteria for granting review are set forth in Wis. Stat. § (Rule) 809.62(lr) and emphasize the law-developing role of this court. Despite this court's law-developing role, 26% of the court's docket this term is expected to be reviews of per curiam decisions of the court of appeals — the highest rate in more than 20 years.[28]
*58 ¶ 101. Neither this court nor the court of appeals developed the law in the instant case. Without developing the law, this court is not fulfilling its role and is instead serving as an error-correcting court. Unfortunately, it is the majority opinion, not the court of appeals, that errs in the instant case.
¶ 102. For the reasons set forth, I dissent and write separately.
¶ 103. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

 Majority op., ¶¶ 30, 31, 36.

 The following sentences of the majority opinion are difficult to understand and are not necessarily consistent:
We hold that joinder was proper because the charges joined were "2 or more acts or transactions connected together or constituting parts of a common scheme or plan," the charges were "connected together," and the charges constituted parts of a "common scheme or plan."
Majority op., ¶ 2 (citing Wis. Stat. § 971.12(1)).
[I]nitial joinder is deemed proper: ... (3) when two or more crimes are based on two or more acts or transactions that are "connected together"; or (4) when two or more crimes are based on two or more acts or transactions that constitute "a common scheme or plan."
Majority op., ¶ 31.
This case presents us with the opportunity to analyze whether the charges joined in Salinas's case should be upheld because they were "2 or more acts or transactions connected together or constituting parts of a common scheme or plan, the charges were "connected together," and the charges constituted "parts of a common scheme or plan."
Majority op., ¶ 36.
In sum, we hold that the initial decision to join the intimidation charges with the sexual assault charges was proper because these crimes were "2 or more acts or transactions connected together or constituting parts of a common scheme or plan."
Majority op., ¶ 50.

 Wisconsin Stat. § 971.12(1) states (in relevant part):
971.12 Joinder of crimes. (1) Two or more crimes may be charged in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan. .. .

 See, e.g., Andrew D. Leipold & Hossein A. Abbasi, The Impact of Joinder and Severance on Federal Criminal Cases: An Empirical Study, 59 Vand. L. Rev. 349, 383-84 (2006) (concluding, based on empirical data, that a "defendant's chances of conviction increase by more than 10% if he stands trial on more than one count."); James Farrin, Note, Rethinking Criminal Joinder: An Analysis of the Empirical Research and Its Implications for Justice, 52 Law & Contemp. Probs. 325, 327—31 (1989) (reviewing a variety of empirical studies showing joinder of multiple charges may result injury confusion, incorrect weighing of the evidence, and improper jury inferences of criminality; studies unanimously found an increase in the likelihood of conviction of defendants facing joined charges).

 See majority op., ¶¶ 30-31, 36; see also State v. Prescott, 2012 WI App 136, ¶ 15, 345 Wis. 2d 313, 825 N.W.2d 515; State v. Bellows, 218 Wis. 2d 614, 622, 582 N.W.2d 53 (Ct. App. 1998); State v. Hoffman, 106 Wis. 2d 185, 208, 316 N.W.2d 143 (Ct. App. 1982).

 See, e.g., Wis. DWD v. Wis. DOJ, 2015 WI 114, ¶¶ 30-34, 365 Wis. 2d 694, 875 N.W.2d 545 (refusing to liberally construe Wis. Stat. §§ 230.80-.89 despite clear legislative directive in Wis. Stat. § 230.02 to "construe[ ] [the statutes] liberally in aid of the purposes declared . ...").

 Francis v. State, 86 Wis. 2d 554, 558, 273 N.W.2d 310 (1979).

 Francis, 86 Wis. 2d at 558-59 (citing Frank J. Remington & Allan J. Joseph, Charging, Convicting, and Sentencing the Multiple Criminal Offender, 1961 Wis. L. Rev. 528, 538-39).

 See majority op., ¶ 36 ("We interpret initial joinder decisions broadly because of the goals and purposes of the joinder statute: (1) trial economy and convenience; (2) to promote efficiency in judicial administration; and (3) to eliminate multiple trials against the same defendant, which promotes fiscal responsibility.") (citing Francis, 86 Wis. 2d at 560; State v. Leach, 124 Wis. 2d 648, 671, 370 N.W.2d 240 (1985)).

 See Note, Criminal Law—Joinder and Severence Under the New Wisconsin Criminal Procedure Code, 1971 Wis. L. Rev. 604, 606.

 Wisconsin Stat. §971.12(1) is modeled after Federal Rule of Criminal Procedure 8. In interpreting and applying Wis. Stat. § 971.12(1), federal authorities assist in my analysis. See State v. Gudenschwager, 191 Wis. 2d 431, 439, 529 N.W.2d 225 (1995).
In analyzing Federal Rule of Criminal Procedure 8, Wright's Federal Practice and Procedure states that a broad interpretation of the joinder statute will allow joinder regardless of whether it is just or fair. 1A Charles Alan Wright et al., Federal Practice And Procedure § 143 (3d ed. 1999); see also Thomas C. Wales, Note, Harmless Error and Misjoinder Under the Federal Rules of Criminal Procedure: A Narrowing Division of Opinion, 6 Hofstra L. Rev. 533, 536-37 n.14 (1978):
For the defendant who goes to trial properly joined under [federal] rule 8, the chances of receiving a separate trial at a later time are unlikely at the trial level and even less likely on appeal.... It is for this reason that the courts' interpretation of [federal] rule 8 and what they first determine to be the bounds of proper joinder are of central importance. Abroad interpretation of rule 8 means broad joinder.

 Frank J. Remington & Allen J. Joseph, Charging, Convicting, and Sentencing the Multiple Criminal Offender, 1961 Wis. L. Rev. 528, 538-39.

 See, e.g., Judge Elliot M. Levine, Evidence-Based Decision Making: EBDM in Wisconsin: A Primer, Wis. Counties, Aug. 2015, at 22; Planning & Policy Advisory Committee, Effective Justice Strategies Subcommittee, Phase II: Progress *49 and Accomplishments 7 (Nov. 13, 2013) ("In the past 5 years, evidence-based practices in Wisconsin have gained strides in their use and understanding. . .."), available at https://www.wicourts.gov/courts/programs/docs/finalreport.pdf; Mary Beth Kirven, National Center for State Courts, The Use of Evidence-Based Practices in Wisconsin Adult Drug Courts: An Overview 1 (2011-12) (identifying "court-related evidence-based strategies that enhance public safety, reduce recidivism, and address criminal and addictive behaviors . ...") (quotation omitted).

 Farrin, supra note 5, at 330.

 Although these writings focus largely on the risks of jury bias and confusion, at least one study concluded that the prejudicial effect of joining multiple charges is actually more substantial in bench trials than jury trials. See Leipold & Abbasi, supra note 5, at 383.

 State v. Leach, 124 Wis. 2d 648, 672, 370 N.W.2d 240 (1985) (citing State v. Bettinger, 100 Wis. 2d 691, 696-97, 303 N.W.2d 585 (1981)).

 See majority op., ¶ 2.

 Majority op., ¶ 5.

 See majority op., ¶ 38.

 See State v. Salinas, No. 2013AP2686, unpublished slip op., ¶ 24 (Wis. Ct. App. Apr. 21, 2015) (emphasis added).

 See majority op., ¶ 46.

 State v. Salinas, No. 2013AP2686, unpublished slip op., ¶ 27 (Wis. Ct. App. Apr. 21, 2015).

 See Leach, 124 Wis. 2d at 672-73.

 See State v. Shillcutt, 116 Wis. 2d 227, 236, 341 N.W.2d 716 (Ct. App. 1983) (" [A]n accepted basis for the admissibility of evidence of other crimes arises when such evidence furnishes part of the context of the crime or is necessary to a full presentation of the case.") (internal quotation marks and quoted source omitted).

 See State v. Salinas, No. 2013AP2686, unpublished slip op., ¶ 36 (Wis. Ct. App. Apr. 21, 2015).

 See State v. Sullivan, 216 Wis. 2d 768, 783, 576 N.W.2d 30 (1998).

 See Alan Ball, Is the Court of Appeals Responsible for the Supreme Court's Per Curiam Diet?, SCOWStats, Apr. 26, 2016, http://www.scowstats.com/2016/04/26/is-the-court-of- *58 appeals-responsible-for-the-supreme-courts-per-curiam-diet/; see also Alan Ball, Justice Abrahamson's Concerns Over the Docket - An Update, SCOWStats, Mar. 20, 2016, http://www.scowstats.com/2016/03/20/justice-abrahamsons-concerns-over-the-docket-an-update/; Alan Ball, Justice Abrahamson's Concerns Over the 2015-16 Docket, SCOWStats, Oct. 15, 2015, http://www.scowstats.com/2015/10/15/justice-abrahamsons-concerns-over-the-2015-16-docket-2/.