In re the Termination of Parental Rights to Caleb J.F., a Person Under the Age of 18:

Courtney F., Petitioner,

v.

Ramiro M.C., Respondent-Appellant,

Caleb J.F., by his Guardian ad Litem, Krislyn M. Holaday, Interested Party-Respondent.

Court of Appeals

*No. 03–3018. Submitted on memoranda November 26, 2003.—Decided January 21, 2004.*

2004 WI App 36

(Also reported in 676 N.W.2d 545.)

On behalf of the respondent-appellant, the cause was submitted on the petition of *Christine L. Hansen*, assistant state public defender, of Waukesha, and *David L. Coon*, guardian ad litem, of Brookfield.

On behalf of the petitioner-respondent, the cause was submitted on the petition of *Mark A. Brellenthin*, guardian ad litem, of Brookfield, and *Jason R. Smith*, of The Law Center for Children and Families, of Madison.

On behalf of the interested party-respondent, a response was filed by *Krislyn M. Holaday*, guardian ad litem, of *Snyder & Ek, S.C.*, of Oconomowoc.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J.[1]   This action involves the involuntary termination of the parental rights (TPR) of sixteen-year-old Ramiro M.C. to his alleged child, Caleb J.F.[2] The issue is whether the juvenile court erred by releasing Ramiro's juvenile and Department of Health and Human Services records to Caleb's guardian ad litem (GAL) for use in the TPR proceeding without first conducting an in camera review of those records to determine their relevance to the TPR proceeding.

¶ 2.   We conclude that the statutory procedures set forth in WIS. STAT. ch. 48 required the juvenile court to determine the relevance of Ramiro's records to the TPR proceeding by an in camera examination prior to disclosure. Because the juvenile court did not conduct such an in camera examination, we reverse the order releasing Ramiro's records, and we remand for the juvenile court to conduct an in camera examination to determine the relevance, if any, of the records to the TPR proceeding.[3]

---

[1] This court granted Ramiro M.C.'s request for leave to appeal on November 17, 2003. Although this case was originally a one-judge appeal, we ordered that it be converted to a three-judge appeal pursuant to WIS. STAT. RULE 809.41(3) (2001–02). All references to the Wisconsin Statutes are to the 2001–02 version.

[2] On November 17, 2003, Ramiro submitted the results of genetic testing indicating a 99.9% probability that he is the father of Caleb and requesting an order finding clear and convincing evidence that he is Caleb's biological father. The record does not reflect any juvenile court ruling on this matter.

[3] On November 20, 2003, the legislature amended WIS. STAT. § 48.396(2)(g). This statute, as amended, provides:

Upon request of any court assigned to exercise jurisdiction under this chapter and ch. 938, any municipal court exercising jurisdiction under s. 938.17(2), or a district attorney, corporation counsel,

¶ 3. Ramiro additionally appeals from an order in the TPR proceeding denying his motion for a protective order barring discovery of his juvenile records. Because the TPR court determined that the juvenile court's prior order releasing Ramiro's juvenile records governed the protective order request, the TPR court denied the motion for a protective order. Since we reverse the juvenile court's order releasing the records, we vacate the TPR court's order denying the protective order.

## BACKGROUND

¶ 4. On September 16, 2003, Caleb's mother, Courtney F., who consented to the voluntary termination of her parental rights, filed a petition requesting the involuntary termination of Ramiro's rights to Caleb.[4] As grounds for the petition, Courtney alleged that Ramiro had failed to assume parental responsibility under Wis. Stat. § 48.415(6) (2001–02). The matter was assigned to Judge Linda M. Van de Water, the regularly assigned juvenile court judge. On September

or city, village, or town attorney to review court records for the purpose of any proceeding in that court or upon request of the attorney or guardian ad litem for a party to a proceeding in that court to review court records for the purpose of that proceeding, the court shall open for inspection by any authorized representative of the requester the records of the court relating to any child who has been the subject of a proceeding under this chapter.

See 2003 Wis. Act 82, § 1. This legislation was published on December 5, 2003, and became effective on December 6, 2003, after the orders appealed in this case were entered. Therefore, the amended statute does not apply.

[4] An earlier petition to terminate the parental rights of both Ramiro and Courtney had been dismissed for failure to allege sufficient facts.

23, 2003, the juvenile court appointed guardian ad litems for Caleb and for each parent.[5]

¶ 5. On September 25, 2003, Caleb's GAL, Attorney Krislyn M. Holaday, filed a "Petition for Release of Juvenile Records" in the TPR proceeding requesting the opening of Ramiro's juvenile court and department records pursuant to WIS. STAT. §§ 48.396(2)(a), 938.396(2)(a), 48.78(2)(a) and 938.78(2)(a).[6] Citing to *State v. Bellows*, 218 Wis. 2d 614, 582 N.W.2d 53 (Ct. App. 1998), the GAL set forth her reasons for requesting review of Ramiro's records, including independent information that Ramiro may have been the subject of a sexual assault allegation. The following day, without a hearing or notice to Ramiro, the juvenile court judge signed the GAL's proposed "Authorization and Order to Open Court Records for Inspection." A plea hearing was scheduled for October 8, 2003. Shortly thereafter advocate counsel was appointed for Ramiro.

¶ 6. When the GAL received a copy of the order releasing Ramiro's records, she faxed a copy of the order to Ramiro's counsel. Upon receipt of the order, Ramiro's counsel filed an objection. In addition, counsel filed a substitution of judge request against Judge Van de Water at the plea hearing. Despite the substitution request, Judge Van de Water ruled that the issue concerning the release of Ramiro's juvenile records would remain before her as the regularly assigned

---

[5] Ramiro's petition for leave to appeal also sought review of the juvenile court's order denying his motion to remove the guardian ad litems for Ramiro and Courtney. This court denied this portion of the petition for leave to appeal, and we therefore do not address the issue.

[6] WISCONSIN STAT. §§ 48.396(2)(a) and 938.396(2)(a) cover juvenile court records. WISCONSIN STAT. §§ 48.78(2)(a) and 938.78(2)(a) cover agency records.

juvenile court judge.[7] For the moment, Judge Van de Water confirmed her order releasing Ramiro's juvenile records, but she ordered further briefing on the issue and scheduled the matter for a further hearing. Thereafter, the TPR proceeding was assigned to Judge Kathryn Foster.

¶ 7.    Following this further hearing, Judge Van de Water again confirmed her ruling. In support, the judge stated that the admissibility of the evidence would be a matter for Judge Foster at the TPR proceedings. In addition, the judge stated that she did not "know how [Holaday] would be a fit and proper guardian ad litem without knowing what is [in the juvenile records], whether or not it can be used or can't be used, but certainly she should have that information if she is going to make a decision regarding the welfare of Caleb."

¶ 8.    At a later hearing that same day in the TPR proceeding, Judge Foster addressed Ramiro's motion for a protective order barring discovery of his juvenile records. Denying the motion, Judge Foster noted that the issue had already been addressed in the proceedings before Judge Van de Water. As such, Judge Foster deferred to that ruling and denied Ramiro's request for a protective order.[8]

¶ 9.    On November 4, 2003, Ramiro filed a motion for stay pending interlocutory appeal from both orders. On November 5, Judge Van de Water granted the stay

---

[7] Although the record does not include a transcript of this proceeding, it appears that the parties agreed to this procedure. In any event, the propriety of Judge Van de Water retaining jurisdiction over the release of Ramiro's records is not before us.

[8] However, Judge Foster did admonish all parties not to disclose the contents of Ramiro's records for any other purpose than to conduct discovery in the pending TPR case.

for a period of ten days, ordering that Caleb's GAL have no further inspection of Ramiro's juvenile records until November 15, 2003. The judge additionally ordered that the parties not disseminate any information from Ramiro's records until November 15, 2003, or pending further order from the court of appeals. On November 11, 2003, Judge Foster entered a written order in the TPR matter denying Ramiro's motion for stay of the denial of the protective order pending appeal and allowing the GAL to depose Ramiro regarding his juvenile records.

¶ 10.    Ramiro followed with a petition for leave to appeal Judge Van de Water's order releasing his juvenile records to the GAL and Judge Foster's order denying Ramiro's request for a protective order in the TPR matter. We granted the petition on November 17, 2003.

### *DISCUSSION*

### *Standard of Review*

¶ 11.    The decision to issue an order for the release of juvenile or department records is left to the discretion of the juvenile court. *Rock County Dep't of Soc. Servs. v. DeLeu*, 143 Wis. 2d 508, 509–10, 422 N.W.2d 142 (Ct. App. 1988) (the juvenile court has discretion to determine if the confidential agency records should be disclosed or made available for inspection). A discretionary decision is one a reasonable court could reach by a consideration of the relevant law, the facts and a process of logical reasoning. *State v. LaBine*, 198 Wis. 2d 291, 306, 542 N.W.2d 797 (Ct. App. 1995). In order to be sustained, a court's discretion must be demonstrably based on the record and must rely on the appropriate and applicable law. *Id*. at 306–07.

¶ 12. In this case, the ultimate issue is whether the governing statutes required the juvenile court to conduct an in camera review of Ramiro's juvenile records prior to their release. This issue presents a question of law, which we review de novo. *Teague v. Bad River Band*, 2003 WI 118, ¶ 23, 265 Wis. 2d 64, 665 N.W.2d 899.

*Rules of Statutory Construction*

¶ 13. When we construe a statute, our aim is to ascertain the intent of the legislature. *State v. Richard G. B.*, 2003 WI App 13, ¶ 8, 259 Wis. 2d 730, 656 N.W.2d 469, *review denied*, 2003 WI 16, 259 Wis. 2d 104, 657 N.W.2d 709 (Wis. Feb. 19, 2003) (No. 02–1302). Conventional statutory construction rules would have us first assess whether the language of the statute is clear and unambiguous. *Id.* If so, our inquiry ends and we simply apply the language to the facts of the case. *Id.* If not, we determine legislative intent from the words of the statute in relation to its context, subject matter, scope, history, and the object the legislature intended to accomplish. *Id.*

¶ 14. However, recent decisions from our supreme court involving statutory construction have not employed this threshold inquiry as to whether the statute is ambiguous or unambiguous. *See Hubbard v. Messer*, 2003 WI 145, ¶ 9, 267 Wis. 2d 92, 673 N.W.2d 676; *Village of Lannon v. Wood-Land Contractors, Inc.*, 2003 WI 150, ¶ 13, 267 Wis. 2d 158, 672 N.W.2d 275. Instead, the supreme court moved directly to an analysis of the legislative intent by looking to resources traditionally reserved for ambiguous statutes. "When interpreting a

statute, our purpose is to discern legislative intent. To this end, we look first to the language of the statute as the best indication of legislative intent. Additionally, we may examine the statute's context and history." *Village of Lannon*, 2003 WI 150 at ¶ 13 (citations omitted). We will employ this new approach in this case.[9]

*Statutory Interpretation*

■

¶ 15. The statutes at issue in this case fall into three groups: (1) WIS. STAT. §§ 48.396(2) and 938.396(2) governing the inspection and disclosure of juvenile records; (2) WIS. STAT. §§ 48.78(2) and 938.78(2) governing the inspection of agency records; and (3) WIS. STAT. § 48.293(2) governing discovery in WIS. STAT. ch. 48 proceedings.[10] When statutes deal with the same subject matter or have a common purpose, we apply the doctrine of in pari materia by reading, applying and construing them together in a manner that harmonizes

---

[9] We do so acknowledging that, in a given case, this new approach could produce a statutory interpretation result contrary to the plain language of the statute. Such, however, is not the result in this case.

[10] The law pertaining to TPR proceedings is set forth in Subchapter VIII of WIS. STAT. ch. 48, which includes §§ 48.40 through 48.435. Other than §§ 48.432, 48.433 and 48.434, which pertain to the release of medical information and birth parent identity to adoptees, neither of which is germane to the issue in this case, the TPR procedures do not contain a discovery statute. Therefore, the general discovery procedures set forth in Subchapter V of ch. 48, § 48.293, govern the discovery at issue in this case. *See also State v. Tammy F.*, 196 Wis. 2d 981, 986–87, 539 N.W.2d 475 (Ct. App. 1995) (§ 48.293 is the exclusive source of discovery rights of parties in ch. 48 actions).

all in order to give each full force and effect. *State v. Jeremiah C.*, 2003 WI App 450, ¶ 17, 260 Wis. 2d 359, 659 N.W.2d 193.

¶ 16. Here, all of these statutes deal with the common subject of the inspection and disclosure of juvenile records. Moreover, as our analysis of these statutes will reveal, all of these statutes assist in implementing the goals and policies of the Juvenile Justice Code relating to the confidentiality of such records. Therefore, we will read all of the statutes in pari materia.

¶ 17. WISCONSIN STAT. §§ 48.396(2)(a) and 938.396(2)(a), governing juvenile court records, both provide in relevant part, "Records of the court assigned to exercise jurisdiction under [ch. 48 and ch. 938] . . . shall not be open to inspection or their contents disclosed except by order of the court assigned to exercise jurisdiction under [ch. 48 and ch. 938] or as permitted under this section [or s. 48.375(7)(e)]." Similarly, Wis. STAT. §§ 48.78(2)(a) and 938.78(2)(a), the statutes governing agency records pertaining to children, provide that such records are not subject to inspection or disclosure except as provided under Wis. STAT. ch. 48 and Wis. STAT. ch. 938 or "by order of the court."

¶ 18. Caleb's GAL argues that Judge Van de Water's release of Ramiro's records was proper under these statutes since the release was accomplished "by order of the court." We reject this argument because it ignores the "relevancy" requirement set out in the discovery provisions of the sister statute, Wis. STAT. § 48.293(2), and unduly diminishes the important gatekeeper rule of the juvenile court regarding the confidentiality of juvenile and agency records.

¶ 19. The discovery statute permits discovery of all records relating to a child "which are *relevant* to the subject matter of a proceeding" under Wis. Stat. ch. 48. Wis. Stat. § 48.293(2) (emphasis added). While this statute does not expressly require an in camera inspection, we deem the legislature's use of the term "relevant" as instructive on the question. The statute does not permit the wholesale inspection of a juvenile's file. Rather, it limits the inspection to only those materials that are "relevant." Obviously, some entity must make this "relevancy" determination. One of two candidates emerges—the juvenile court or the party seeking discovery. To commit this determination to the party or entity seeking discovery would stand the statute on its head since it would necessarily allow and require an inspection of the entire record by a stranger who has no responsibility to serve as the gatekeeper of the file. Thus, the only logical and sensible interpretation is that the legislature intended the juvenile court to make this "relevancy" determination. And, that determination can only be made by an in camera inspection of the records.

¶ 20. This interpretation also comports with the traditional notion that the judge, not the party seeking discovery, is the arbiter of relevancy when it comes to discovery disputes. Just as Wis. Stat. § 48.293(2) makes relevancy the benchmark for discovery in proceedings under Wis. Stat. ch. 48, so also does Wis. Stat. § 804.01, the general statute governing discovery in civil proceedings. "Parties may obtain discovery regarding any matter, not privileged, which is *relevant* to the subject matter involved in the pending action . . . ." *Id.* (emphasis added). Case law has long held that the trial courts are the arbiters of discovery disputes. *See, e.g., Shier v. Freedman,* 49 Wis. 2d 41, 43, 181 N.W.2d 400 (1970)

("The sole issue on this appeal is whether *the trial court* abused its discretion in granting plaintiff's motion for the inspection of the medical books or journals . . . .") (emphasis added). We presume that the legislature enacted the discovery provisions of § 48.293(2) with an awareness of this well-established law. *See Peters v. Menard, Inc.*, 224 Wis. 2d 174, 186, 589 N.W.2d 395 (1999).

¶ 21. Reading the discovery statute in pari materia with the statutes barring inspection or disclosure of juvenile court or agency records, we conclude that the legislature intended that the juvenile court must make a threshold relevancy determination by an in camera review when confronted with: (1) a discovery request under WIS. STAT. § 48.293(2); (2) an inspection request of juvenile records under WIS. STAT. §§ 48.396(2)(a) and 938.396(2)(a); or (3) an inspection request of agency records under WIS. STAT. §§ 48.78(2)(a) and 938.78(2)(a).

¶ 22. Our reversal of the juvenile court's order rests on a further ground. In support of the ruling releasing Ramiro's records without first determining their relevancy to the TPR proceeding, Judge Van de Water stated that Ramiro's confidentiality concerns were matters of evidentiary admissibility for Judge Foster in the TPR proceeding. However, this reasoning blurs the distinction between a discovery ruling on the one hand and an evidentiary ruling on the other. The issue before Judge Van de Water was whether any of Ramiro's juvenile records was relevant *for purposes of discovery* in the TPR proceeding. In contrast, the issue before Judge Foster will be whether any of the disclosed records are relevant *for evidentiary purposes*.

¶ 23. Stated differently, but to the same effect, discovery rulings are not evidentiary rulings. Instead,

discovery rulings simply prescribe the outer bounds of allowable discovery. Under WIS. STAT. § 804.01(2)(a), the test for permissible discovery is whether the "[i]nformation sought appears reasonably calculated to lead to the discovery of admissible evidence." We see no reason why this should not be the same test for purposes of discovery under WIS. STAT. § 48.293(2).

¶ 24. In summary, Judge Van de Water had an important gatekeeper role to perform when confronted with the GAL's discovery request. That role was to determine whether any of Ramiro's juvenile court or agency records were relevant to the GAL's discovery request in the TPR proceeding. That role is markedly different from that which Judge Foster will perform as the judge presiding at the TPR proceedings. If we upheld Judge Van de Water's ruling, the GAL would have full access to Ramiro's records without any prior judicial supervision or input. Because Judge Van de Water misperceived the distinction between a discovery ruling before trial and an evidentiary ruling at trial, an in camera inspection of the records never occurred in this case.

### The Case Law

¶ 25. Our holding is supported by the few cases that addressed this topic. In *Rock County Dep't of Soc. Servs. v. DeLeu*, 143 Wis. 2d 508, 509–10, 422 N.W.2d 142 (Ct. App. 1988), this court addressed WIS. STAT. § 48.78(2)(a), the statute conferring confidentiality on agency records concerning a juvenile. As noted, this statute, like WIS. STAT. § 48.396 covering juvenile court records, bars inspection or disclosure of agency records except "by order of the court." *DeLeu*, 143 Wis. 2d at 509–10. In *DeLeu*, the juvenile court, without first conducting an in camera review of the records, ordered

the county department of social services to deliver its files to a criminal court judge for purposes of an in camera review. *DeLeu*, 143 Wis. 2d at 509. The department appealed. *Id.* In defending the order, the criminal defendant argued that, prior to ordering the release of agency records, the juvenile court had properly considered the interest of the juvenile and the public interest in maintaining the confidentiality of the records and the criminal defendant's interest in a fair trial. *Id.* at 510. We concluded that the juvenile court had not exercised its discretion because it ordered the department to release the records to the criminal court judge without first conducting an in camera review, thereby delegating its duty to determine which, if any, of the agency's files would be disclosed to the criminal defendant or made available for inspection. *Id.* at 510–11.

¶ 26. Thus, *DeLeu* instructs that the phrase "by order of the court" contemplates an exercise of discretion that cannot be meaningfully undertaken without measuring the reasons underlying the request for the inspection against the information actually contained in that record. In *DeLeu*, the juvenile court had performed only half of that exercise—ascertaining the reasons for the requested inspection. However, the court failed to perform the other half—measuring those reasons against the record itself.

¶ 27. The same situation exists here. While hearing out Caleb's GAL as to the reasons for the requested inspection, Judge Van de Water failed to measure those reasons against the content of Ramiro's juvenile records. Therefore, the judge erroneously exercised her discretion by ordering the disclosure of Ramiro's records without first conducting an in camera review to determine the relevance of the records to the TPR

proceedings and without first providing notice to the juvenile or his or her representative.[11]

¶ 28. Two other cases, while not directly controlling, lend support to our holding. In *State ex rel. Herget v. Waukesha County Circuit Court*, 84 Wis. 2d 435, 267 N.W.2d 309 (1978), the plaintiffs in a civil action sued a juvenile and his parents for damage caused by the juvenile's intentional acts. The plaintiffs sought to discover the law enforcement records of the juvenile regarding the incident. *Id.* at 442. The statute in existence at the time barred inspection or disclosure of peace officers' records of children, but like the current WIS. STAT. § 48.396(2)(a), contained an exception allowing inspection "by order of the court." *Herget*, 84 Wis. 2d at 446.

¶ 29. Because the statute did not prescribe the circumstances in which the court could order the disclosure of records, the *Herget* court looked to the statutory scheme of WIS. STAT. ch. 48. *Herget*, 84 Wis. 2d at 449. The court observed that the statutes mandate confidentiality as the general rule and disclosure as the exception, thus expressing the legislature's determination that the best interests of the child and the administration of the juvenile justice system require protecting the confidentiality of police, court and social agency records relating to juveniles.[12] *See id.*, at 451–52.

¶ 30. The *Herget* court held:

---

[11] In this case, although Ramiro did not initially receive notice of the GAL's inspection request and of the juvenile court's original order releasing the records, he was later notified of the court's ruling and was permitted to be heard on the matter.

[12] Although the juvenile justice code is now contained in WIS. STAT. ch. 938, it nevertheless maintains its requirements of confidentiality. *See* WIS. STAT. § 938.396(1).

> In view of the statutory expression of the strong public interest in promoting the best interests of the child and the administration of the juvenile justice system by protecting the confidentiality of police, court, and social agency records relating to juveniles . . . the circuit court is justified in ordering the discovery of all or any part of sec. 48.26 records only when the court has reviewed the records *in camera* and has made a determination that the need for confidentiality is outweighed by the exigencies of the circumstances.

*Herget*, 84 Wis. 2d at 451–52.

¶ 31. The *Herget* court then set forth the procedures to be followed prior to the disclosure of a child's records: (1) the petition made by a person seeking the disclosure of records for use in private litigation must describe the information sought, the basis for the belief that the information is in the child's police records, its relevance to the plaintiff's action, the probable admissibility of the information as evidence at trial and efforts made to obtain the information elsewhere; (2) the child must be notified that the records are being sought and the child must be given an opportunity to respond; and (3) the court must make an in camera inspection of the file.[13] *Id.* at 452–53.

---

[13] The facts of this case demonstrate that the first and second requirements of *State ex rel. Herget v. Waukesha County Circuit Court*, 84 Wis. 2d 435, 267 N.W.2d 309 (1978), were satisfied. As to the first requirement, the GAL described the information she was seeking, the basis for her belief that the juvenile records might contain that information, and the relevance to the TPR proceeding. As to the second requirement, Ramiro received notice (albeit belatedly) of the GAL's request and he was allowed to be heard on the matter. However, the third *Herget* requirement—an in camera inspection by the juvenile court—did not occur.

If the court determines that certain information contained in [the] police file is essential to plaintiffs' cause and cannot be obtained with reasonable effort from other sources, the court must then determine whether plaintiffs' need for that information outweighs society's interest in protecting its confidentiality. In making this determination the circuit court must balance two private and two societal interests: the victim's interest in recovering for the damage he has suffered and the juvenile's interest in rehabilitation and in avoiding the stigma of revelation; the redress of private wrongs through private litigation and the protection of the integrity of the juvenile justice system.

*If, after balancing these interests, the circuit court determines that certain information should be disclosed, the court must carefully tailor its discovery order to permit disclosure of only that information.* The trial court shall make a record of the reasons for its determination to allow or not to allow discovery, and the record shall be sealed.

*Id.* at 453 (emphasis added; footnotes omitted).

¶ 32. The *Herget* procedures were later discussed in *Bellows*, 218 Wis. 2d 614. There, in addition to other charges, the defendant was charged with child neglect. *Id.* at 617. On the eve of trial, the State obtained the juvenile court's release of a CHIPS petition filed against the defendant and the minutes of the CHIPS proceeding indicating that the defendant had admitted to the petition. *Id.* at 618, 626. Although the juvenile court had conducted an in camera inspection, the court had released the records without a hearing, without an opportunity for a representative of the children to be heard on the question, and without an analysis of the "best interests" of the children. *Id.* at 627. Relying on *Herget*, this court held that the juvenile court procedure

was deficient and therefore the adult court had erred in admitting the records. *Bellows*, 218 Wis. 2d at 626–34.

¶ 33. Both *Herget* and *Bellows* rest on two fundamental principles: the importance of the confidentiality of juvenile records and the importance of the juvenile court's role as the "gatekeeper" of those records. We conclude that *Herget* and *Bellows* support our conclusion that the law requires an in camera inspection prior to granting any request for the disclosure of a child's juvenile court and department records for purposes of any other proceeding.

¶ 34. In reaching this conclusion, we recognize that the disclosure of Ramiro's juvenile records would occur in the closed setting of a TPR proceeding whereas the records in *Herget* and *Bellows* would occur in the public forums of a civil and criminal court. We also recognize that here it is a GAL, acting as an agent of the TPR court, rather than an adversary party, who is seeking the inspection. *See Paige K.B. v. Molepske*, 219 Wis. 2d 418, 430, 580 N.W.2d 289 (1998) (the GAL essentially functions as an agent or arm of the court, charged with the same standard that must ultimately govern the court's decision—the best interests of the child). On the same theme, we acknowledge Judge Van de Water's concern that without unfettered access to Ramiro's juvenile records, the GAL might not be able to make a fully informed recommendation to Judge Foster as to whether Ramiro's parental rights should be terminated.

¶ 35. Despite these factual differences and concerns, we adhere to our holding for two reasons. First, as our statutory analysis reveals, the legislature intended that the juvenile court determine the relevancy of juvenile court records prior to any release of the records. If the legislature had wanted to reduce the

gatekeeper function of the juvenile court when the records will be revealed in another WIS. STAT. ch. 48 proceeding or where the records are sought by a GAL as opposed to an adversary party, it could have done so by eliminating the relevancy requirement in those settings. Second, although both *Herget* and *Bellows* noted the risk that the records would be revealed in a public forum, both cases rest on more fundamental principles —the confidential nature of juvenile records and the important role of the juvenile court as the gatekeeper of such records.

¶ 36.   We also observe that the *Herget* procedures are now codified in WIS. STAT. §§ 48.396(5) and 939.396(5). Since these statutes deal only with law enforcement records, an argument could be made that the legislature did not intend these procedures to apply to juvenile court records. However, our analysis of the statutes has brought us to a contrary interpretation. As such, there was no need for the legislature to codify the *Herget* procedures with regard to juvenile court records.

### Protective Order

¶ 37.   Ramiro additionally appeals Judge Foster's ruling in the TPR proceeding denying his motion for a protective order under WIS. STAT. § 804.01(3). Pursuant to that statute, if a party files a motion and shows good cause, "the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Ramiro's request to Judge Foster for a protective order echoed his arguments to Judge Van de Water against the disclosure of his juvenile records.

¶ 38.   In denying Ramiro's motion, Judge Foster deferred to the prior ruling of Judge Van de Water allowing the GAL to inspect Ramiro's juvenile records.

728

As a result, Judge Foster concluded that the prior ruling governed Ramiro's request for a protective order. However, in light of our decision reversing Judge Van de Water's ruling, it follows that we must vacate Judge Foster's order.

## *CONCLUSION*

¶ 39. We conclude that a request for discovery of a juvenile record pursuant to Wɪs. Sᴛᴀᴛ. §§ 48.396(2)(a) or 938.396(2)(a) or a request for inspection of an agency record pursuant to Wɪs. Sᴛᴀᴛ. §§ 48.78(2)(a) or 938.78(2)(a) requires the juvenile court to conduct an in camera review of the juvenile records to determine whether they are relevant to the stated purpose of the discovery or inspection. Although not at issue in this case, we further conclude that the juvenile court must provide notice of such a request to the juvenile and provide an opportunity to be heard.

¶ 40. Since the juvenile court did not conduct an in camera inspection, we reverse the order releasing Ramiro's juvenile records and we remand with directions that the juvenile court conduct such a review. We further vacate the order denying the protective order.

*By the Court.*—Order reversed and cause remanded; order vacated.