COURT OF APPEALS
DECISION
DATED AND FILED

July 5, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP1631**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2016JC23**

**IN COURT OF APPEALS
DISTRICT II**

IN THE INTEREST OF E.J.H., A PERSON UNDER THE AGE OF 18:

MANITOWOC COUNTY HUMAN SERVICES DEPARTMENT,

PETITIONER-RESPONDENT,

V.

T.H.,

INTERVENOR-APPELLANT.

APPEAL from an order of the circuit court for Manitowoc County: MARK ROHRER, Judge. *Affirmed*.

¶1 NEUBAUER, J.[1] T.H. appeals from an order denying his motion for *in camera* review and disclosure of juvenile records pursuant to ***State v. Bellows***, 218 Wis. 2d 614, 582 N.W.2d 53 (Ct. App. 1998). The records pertain to Evan,[2] a juvenile for whom T.H. and his wife served as guardians. Evan died in April 2018 while in their care, and the State has charged T.H. with felony murder and other crimes in connection with his death. T.H. sought the records, arguing that they contain information that is relevant to the defense of reasonable discipline of a child that he wishes to raise in the criminal case. The juvenile court denied T.H.'s motion after concluding that he had not met his burden to show a basis for disclosure under ***Bellows.*** After careful review of T.H.'s arguments and the record, this court concludes that the juvenile court did not erroneously exercise its discretion in denying his motion. Accordingly, this court affirms.

## BACKGROUND

¶2 According to his ***Bellows*** motion, T.H. and his wife began discussions with Child Protective Services (CPS) about serving as "a long-term resource" for Evan and his two siblings in May 2017. Though not stated expressly in T.H.'s motion or the briefs on appeal, CPS appears to be a division of the Manitowoc County Human Services Department (the "Department").

¶3 The children were placed with T.H. and his wife in August 2017. In January 2018, T.H. and his wife became their legal guardians. During the process

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] We refer to Evan by a pseudonym consistent with the policy set forth in WIS. STAT. RULE 809.86(1).

that culminated with the guardianship, CPS visited the home of T.H. and his wife multiple times. According to T.H., he "discussed the behavioral issues the children were having as well as how he was addressing those issues with the CPS social workers" during these visits. Specifically, T.H. "[told] the social worker how he had the children burn off that energy, including by carrying wood and shoveling gravel."

¶4    On April 20, 2018, Evan was brought to a hospital and pronounced dead. An investigation revealed that T.H. had decided to punish Evan that day by having him carry logs and had left another child to supervise the punishment. In his *Bellows* motion, T.H. described what happened next:

> While [T.H.] was [nowhere] near the residence, [the other child] took his mandate well beyond the bounds of what [T.H.] intended. [The other child] "hit, [struck], and poke[d] [Evan] approximately 100 times, sometimes using a belt or stick, and rolled the heavy log across [Evan]'s chest with his foot, before repeatedly shoving [Evan] to the ground, standing on [Evan]'s body and head while [Evan] was face-down in a puddle, and burying [Evan] completely in approximately 80 pounds of packed snow."

¶5    The State has charged T.H. with multiple offenses in connection with Evan's death, including felony murder, intentionally contributing to the delinquency of a child causing death, child abuse intentionally causing harm as party to a crime, intentionally contributing to the delinquency of a child, and battery as party to a crime. The charging document in the criminal case is not part of the record on appeal, but T.H. describes the allegations against him in his brief on appeal as follows:

> The State is accusing T.H. of utilizing disciplinary methods that were so unreasonable that he is charged with contributing to the delinquency of [the other child] resulting in the death of [Evan] and felony murder, despite not being present for the incident leading to [Evan]'s

3

> unexpected death simply because the death occurred while [Evan] was carrying logs as discipline assigned by T.H. However, the death was not the result of the discipline that T.H. employed, it was the result of [the other child] repeatedly assaulting and abusing [Evan] and burying him in the snow after beating him until he succumbed to the cold.

¶6 T.H. has raised the defense of reasonable discipline of a child. *See* WIS. STAT. § 939.45(5)(b); WIS JI—CRIMINAL 950 ("The law allows a person responsible for the child's welfare to use reasonable force to discipline that child. Reasonable force is that force which a reasonable person would believe is necessary." (footnotes omitted)). In furtherance of that defense, T.H. filed a ***Bellows*** motion in Evan's child in need of protection or services (CHIPS) proceeding asking the juvenile court to review *in camera* and disclose Evan's "[CPS] records, including his Department of Human Services file." T.H. asserted that CPS's involvement in placing the children in T.H.'s home covered the period between May 2017 and January 2018. T.H. specifically sought disclosure of the following information in the records: (1) "information related to the behavioral issues the children exhibited prior to being placed in [T.H.'s] home"; (2) "information about CPS's awareness or approval of the discipline methods and chores the children had to complete"; and (3) "information regarding the behavioral improvements that were seen in the children after being placed in [T.H.'s] home."

¶7 The juvenile court denied T.H.'s motion at a hearing on September 8, 2022. In its oral ruling, the court gave three reasons for its decision. First, the court faulted T.H. for not submitting "an affidavit stating that [the information he sought] exists and how he knows it existed." Next, the court noted that the records sought by T.H. contained information regarding Evan's siblings. This raised two issues in the court's view: (1) the information pertaining to the

siblings was not relevant to the issues in the criminal case; and (2) counsel had not been appointed to represent the siblings in regards to T.H.'s motion. Finally, the court concluded that T.H. had not shown that the information he was seeking was relevant to the criminal case. The court stated that the first and third categories of information T.H. was seeking—behavioral issues before the children were placed in T.H.'s home and behavioral improvements observed after the children were placed in T.H.'s home—were not relevant to T.H.'s reasonable discipline defense. With respect to the second category—CPS's awareness or approval of T.H.'s disciplinary methods—the court concluded that the request "lack[ed] specificity":

> Specificity is required from my standpoint in terms of the first element of the information being requested, because him saying – well, I had kids carrying logs or I had kids shoveling gravel as a means of discipline – and that being told to a social worker, I don't see how that in turn, turns into tacit approval for child abuse….
>
> Again, chores can be given to children that are reasonable and permitted as far as non-abuse is concerned.

The court also commented that T.H.'s request lacked specificity with respect to a timeframe; T.H. sought all CPS records over the time period from May 2017 to January 2018, a period that ended four months before Evan's death.

## DISCUSSION

¶8    Wisconsin law mandates that records of an "agency" regarding "an individual who is or was in its care or legal custody" be kept confidential and permits their disclosure only under limited circumstances, including by court order. *See* WIS. STAT. §§ 48.78(2)(a), 938.78(2)(a). (The Department is an "agency" for the purpose of these statutes. *See* WIS. STAT. §§ 46.23, 48.02(2g), 48.78(1), 938.02(2g), 938.78(1)). This court has previously recognized that these and other statutes "mandate confidentiality as the general rule and disclosure as

the exception, thus expressing the legislature's determination that the best interests of the child and the administration of the juvenile justice system require protecting the confidentiality of police, court and social agency records relating to juveniles." ***Courtney F. v. Ramiro M.C.***, 2004 WI App 36, ¶29, 269 Wis. 2d 709, 676 N.W.2d 545.

¶9      When presented with a request to disclose agency records related to a juvenile, the juvenile court "must balance the [requesting party's] need for the information requested against society's interest in protecting the confidentiality of [the] records." ***State ex rel. Herget v. Circuit Ct. for Waukesha Cnty.***, 84 Wis. 2d 435, 452, 267 N.W.2d 309 (1978).   Confidentiality, as the ***Herget*** court recognized, "encourage[s] the juvenile, parents, social workers and others to furnish information which they might not otherwise disclose in an admittedly adversary or open proceeding." ***Id.*** at 451.  To demonstrate a need for the records, the requesting party must identify the following:

> (1) the type of information being sought; (2) the basis for the belief that the information is in the juvenile records; (3) the relevance of the information to the cause of action; (4) the probable admissibility of the information as evidence; (5) the efforts that have been made to obtain the information from other sources; and (6) any hardship to the requesting individual should the discovery order not issue.

***Bellows***, 218 Wis. 2d at 630.  In balancing the competing interests, courts must remain cognizant of the statutory directive that "the best interests of the child … shall always be of paramount consideration." *See* WIS. STAT. § 48.01(1).

*Standard of Review*

¶10      In ***Courtney F.***, this court stated that the decision to release juvenile records "is left to the discretion of the juvenile court" and reviewed that decision

under the deferential erroneous exercise of discretion standard. ***Courtney F.***, 269 Wis. 2d 709, ¶11; *see also* ***Bellows***, 218 Wis. 2d at 627-28; ***State v. A.S.W.***, Nos. 2015AP2119 and 2015AP2120, unpublished slip op. ¶14 (WI App Oct. 5, 2016) (analyzing juvenile court's denial of disclosure of juvenile court records to criminal defendant for use in criminal proceeding for an erroneous exercise of discretion).[3] Under that standard, the juvenile court's decision will stand so long as it applied the correct law to the facts and used demonstrated logical reasoning to reach a reasonable conclusion. *See* ***Courtney F.***, 269 Wis. 2d 709, ¶11.

¶11    T.H.'s arguments on appeal rely heavily on the purpose for which he seeks disclosure of the records. In his view, because he needs the records to present a defense to criminal charges, his request implicates his constitutional rights to present a defense and to a fair trial. The involvement of those rights, he argues, requires this court to review the juvenile court's decision de novo rather than for an erroneous exercise of discretion. And, he argues that his constitutional rights tip the interest balancing analysis decisively in favor of his need for the records. This court disagrees.

¶12    Regarding the standard of review, T.H. cites ***State v. Green***, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298, *overruled on other grounds by* ***State v. Johnson***, 2023 WI 39, 407 Wis. 2d 195, 990 N.W.2d 174, in which our supreme court adopted and applied a bifurcated standard of review for circuit court decisions denying requests for *in camera* review of privately held counseling or

---

[3] Though unpublished, ***State v. A.S.W.***, Nos. 2015AP2119 and 2015AP2120, unpublished slip op. (WI App Oct. 5, 2016) is a one-judge opinion citeable under WIS. STAT. RULE 809.23(3)(b).

mental health records of witnesses in criminal cases.[4] Under ***Green***, the circuit court's findings of fact were reviewed for clear error, but whether the defendant made a showing sufficient to warrant *in camera* review of the records was reviewed de novo. ***Id.***, ¶¶20-21. The standard of review set forth in ***Green*** does not control here. ***Bellows***, ***Courtney F.***, and ***A.S.W.*** set forth an erroneous exercise of review standard for juvenile court decisions regarding the release of juvenile records, including (as in ***Bellows*** and ***A.S.W.***) where the records are sought for use in a criminal proceeding. This court is bound to follow ***Bellows*** and ***Courtney F.*** notwithstanding T.H.'s arguments to the contrary. *See **Cook v. Cook***, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997).

*The Juvenile Court's Exercise of Discretion*

¶13　Turning to the merits, this court looks first to whether the juvenile court applied the correct law. *See **Courtney F.***, 269 Wis. 2d 709, ¶11. It did. At the start of its oral ruling, the court recognized that Wisconsin law "mandates confidentiality as a general principle [and] disclosure as … the exception" in regards to juvenile records. The court then identified the six criteria that guide the analysis under ***Bellows***. It also noted the concern this court and our supreme court have expressed that the juvenile whose records are at issue be given an opportunity to present his or her view regarding disclosure. *See **Bellows***, 218 Wis. 2d at 630 (quoting ***Herget***, 84 Wis. 2d at 452).

---

[4] The Wisconsin Supreme Court recently rejected the *in camera* review process for privately-held, privileged health-care records, overruling ***State v. Green*** and other cases that applied that process. ***State v. Johnson***, 2023 WI 39, ¶1 & n.3, 407 Wis. 2d 195, 990 N.W.2d 174 (overruling ***State v. Green***, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298 and ***State v. Shiffra***, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993)).

¶14    Next, this court considers whether the juvenile court applied the law to the facts and used logic to reach a reasonable conclusion. *See* ***Courtney F.***, 269 Wis. 2d 709, ¶11. In applying the ***Bellows*** criteria, the juvenile court identified three considerations that weighed against granting T.H's motion. T.H. challenges the court's analysis with respect to each consideration, but none of his arguments show an erroneous exercise of discretion.

¶15    T.H. first contends that the juvenile court improperly relied on his failure to submit an affidavit describing the type of information he sought because WIS. STAT. § 48.396(5) does not require an affidavit. This argument misses the mark because § 48.396 does not apply in this case. That section addresses access to records of law enforcement agencies and juvenile courts. Here, the records sought by T.H. are not those of a law enforcement agency or juvenile court but rather records of CPS, the disclosure of which is governed by WIS. STAT. § 48.78. Moreover, though § 48.78 does not expressly require the submission of an affidavit in support of a motion to disclose agency records, T.H. had the burden to establish a basis for disclosure. *See* ***Courtney F.***, 269 Wis. 2d 709, ¶31. Because T.H. volunteered in his motion that he "ha[d] personal knowledge of the contents of the CPS file" and could "attest to the presence of the sought-after information" in it, the court could reasonably expect T.H. to provide evidentiary support via an affidavit for the factual assertions in his motion.

¶16    The juvenile court noted next that the records T.H. sought related not only to Evan but also his two siblings. This raised two issues in the court's view: (1) T.H.'s request was overly broad because any discipline imposed on the siblings was not relevant to the criminal case, which focused on Evan; and (2) counsel had not been appointed to represent the siblings in connection with T.H.'s motion. T.H. contends that the court improperly "faulted T.H. for failing to appoint

9

counsel" for the siblings, but the hearing transcript directly refutes this argument. In addressing this point, the court stated that it "[was] not saying that [T.H.] had to appoint[] counsel" but instead that he was responsible for informing the court "that it needs to be done." The court reiterated this point after T.H.'s counsel said she did not know where the siblings were:

> And again, the point that's being missed from my standpoint is this—is that the law indicates that they have a right to be heard…. I mean when a motion is scheduled one would think that that information would be brought to my attention at the time of the filing so that I would know.

¶17     The juvenile court accurately stated the law on this issue. As T.H. concedes, this court recognized in *Bellows* that a juvenile whose records are sought "should be given the opportunity to present to the court [his or her] position concerning disclosure of all or part of the records." *Bellows*, 218 Wis. 2d at 630 (alteration in original; quoting *Herget*, 84 Wis. 2d at 452). "Whether the children's best interests are served by the release of the information," this court wrote, "can only be determined if the children are represented at a hearing and given an opportunity to respond to the … request." *Bellows*, 218 Wis. 2d at 632-33.

¶18     Though T.H. may not have been responsible for obtaining counsel for Evan's siblings or ensuring that counsel representing their interests was present, the court reasonably concluded that T.H. bore some responsibility for, at a minimum, alerting the Department or the court that the siblings needed to be represented at the hearing. T.H. filed the motion and crafted his requests to include information that extended to Evan's siblings. He cited *Bellows* in his motion and thus presumably knew that the siblings had to be represented to enable the court to balance their interests against T.H.'s need for the records. The court

10

did not act unreasonably in determining that T.H. had some responsibility for flagging this issue or in relying on his failure to do so as one reason to deny his motion.

¶19    The third reason given by the juvenile court for denying T.H.'s motion was that the records he sought were not relevant to his reasonable discipline defense. In *Courtney F.*, 269 Wis. 2d 709, ¶21, this court stated that "the juvenile court must make a threshold relevancy determination by an in camera review" when asked to disclose agency records under WIS. STAT. § 48.78.[5] The parties agree that the question for the juvenile court was whether the records are relevant for the purpose of discovery in the criminal proceeding. *See Courtney F.*, 269 Wis. 2d 709, ¶22. T.H. argues that this relevancy analysis should be governed by WIS. STAT. § 804.01(2)(a), which sets forth the scope of discovery in civil actions. But as the Department notes, that standard does not apply in T.H.'s criminal case. This court will evaluate the juvenile court's analysis of relevance under the definition set forth in WIS. STAT. § 904.01, applicable to criminal cases, which defines relevant evidence as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

---

[5] It appears the juvenile court did not examine the records sought by T.H. *in camera* but instead analyzed their relevance according to the description of the contents provided by T.H., who had reviewed them. T.H. does not argue that the court's failure to examine the records *in camera* is grounds for reversal.

11

¶20 WISCONSIN STAT. § 939.45 codifies the defense of reasonable discipline by recognizing a privilege, which "is a defense to prosecution for any crime based on [the] conduct":

> When the actor's conduct is reasonable discipline of a child by a person responsible for the child's welfare. Reasonable discipline may involve only such force as a reasonable person believes is necessary. It is never reasonable discipline to use force which is intended to cause great bodily harm or death or creates an unreasonable risk of great bodily harm or death.

Sec. 939.45(5)(b). The defense consists of three elements: "(1) the use of force must be reasonably necessary; (2) the amount and nature of the force used must be reasonable; *and* (3) the force used must not be known to cause, or create a substantial risk of, great bodily harm or death." *State v. Kimberly B.*, 2005 WI App 115, ¶30, 283 Wis. 2d 731, 669 N.W.2d 641. The jury instruction for the defense expands on the concepts of reasonable necessity and reasonable force as follows:

> Whether a reasonable person would have believed that the amount of force used was necessary and not excessive must be determined from the standpoint of the defendant at the time of the defendant's acts. The standard is what a person of ordinary intelligence and prudence would have believed in the defendant's position under the circumstances that existed at the time of the alleged offense.
>
> In determining whether the discipline was or was not reasonable, you should consider the age, physical and mental condition and disposition of the child, the conduct of the child, the nature of the discipline, and all the surrounding circumstances. It is never reasonable discipline to use force which is intended to cause great bodily harm or death or which creates an unreasonable risk of great bodily harm or death.

WIS JI—CRIMINAL 950 (footnotes omitted). Though the juvenile court did not cite the statute or the jury instruction in its remarks, it did not erroneously exercise its

discretion in concluding that the information sought by T.H. was not relevant to the defense.

¶21     As to the first category of information T.H. sought, the juvenile court reasonably concluded that the behavior of Evan and his siblings before they came to live with T.H. would not be relevant to the defense. The jury instruction states that the reasonableness of discipline is determined, among other things, in relation to the conduct that prompted it. *Id.* The charges against T.H. arise out of events that culminated with Evan's death on April 20, 2018, more than eight months after Evan and his siblings began living with T.H. It is reasonable to infer that any behavior T.H. attempted to correct through discipline occurred close in time to the date of Evan's death, not months or years before Evan and his siblings began living with T.H. Thus, as the court concluded, "[h]ow kids are acting has no bearing on reasonable discipline, as far as how they were acting before they came to [T.H.'s] home." The court's analysis was premised on a reasonable application of the law concerning reasonable discipline to the facts presented.

¶22     The juvenile court also did not erroneously exercise its discretion with respect to the second category of information sought by T.H. T.H. sought CPS records that would show its awareness of the chores T.H. used to discipline Evan and his siblings. He argues that CPS not only knew of these methods but tacitly approved of them because it "did not have concerns at the time." Thus, T.H. argues, the records are relevant because they tend to show that the methods were reasonable and did not give rise to a substantial risk of death or serious bodily harm.

¶23     The juvenile court disagreed, concluding that CPS's purported knowledge of T.H.'s disciplinary methods would not constitute "tacit approval"

for child abuse and that T.H.'s request for all of the agency's records over the eight-month period between May 2017 and January 2018 was overly broad. This court agrees that, without specificity, T.H.'s description of discussions with CPS officials identifying the type of tasks he was using to discipline Evan and his siblings do not show that CPS tacitly approved of those methods, much less their use in a manner that constituted child abuse. As the juvenile court observed, disciplining children through chores is "reasonable and permitted" so long as it does not cross the line into child abuse. But the criminal case against T.H. does not appear to be about whether T.H.'s discipline of Evan with the unspecified use of chores, such as carrying logs, was reasonable. As T.H. himself argues, reasonable chores are not what killed Evan. Instead, it appears from T.H.'s description of the charges against him that the State's case focuses on his conduct in directing another child to supervise Evan and allowing the other child to mistreat Evan to such an extent as to cause his death. CPS's discussions with T.H. in 2017 about how, in his words, "he had the children burn off [extra] energy, including by carrying wood and shoveling gravel," do not show that CPS tacitly approved the conduct by T.H. that is alleged by the State to constitute child abuse and is simply not relevant to the evaluation of that conduct.

¶24 In addition, the records at issue pertain to a time period that ended four months before Evan's death. By contrast, T.H.'s defense will necessarily focus on the conduct that forms the basis of the charges against him, and the reasonableness of that conduct will be determined by the circumstances surrounding it. Those circumstances will necessarily focus on the events immediately leading up to Evan's death. As this court has already stated, CPS's awareness in the summer of 2017 that T.H. was using physical labor as a form of

14

discipline is not relevant to determining the reasonableness of his conduct in April 2018.

¶25 The same conclusion applies to the third category of information sought by T.H.—how the behavior of Evan and his siblings improved after they began living in T.H.'s home. T.H. argues the improvements in behavior noted in the CPS records are relevant to establishing the reasonableness of his disciplinary methods. The juvenile court disagreed, and though it did not explain its reasoning, this court's review of the record supports the juvenile court's decision. *See Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737 ("Although the proper exercise of discretion contemplates that the circuit court explain its reasoning, when the court does not do so, we may search the record to determine if it supports the court's discretionary decision."). That CPS personnel may have noted improvements in the behavior of T.H. and his siblings months before the events at issue in the criminal case in response to T.H.'s disciplinary methods is not relevant to determining the reasonableness of T.H.'s conduct vis-à-vis the children prior to Evan's death.

*Other Arguments*

¶26 T.H. raises two additional arguments, neither of which he raised before the juvenile court. This court could deem his failure to do so as a forfeiture. *See Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2007 WI 98, ¶23, 303 Wis. 2d 258, 735 N.W.2d 93 ("Generally, arguments raised for the first time on appeal are deemed waived."). However, the Department does not argue forfeiture, and therefore this court will exercise its discretion to briefly consider T.H.'s arguments. *See State v. Kaczmarski*, 2009 WI App 117, ¶9, 320 Wis. 2d 811, 772 N.W.2d 702 ("Whether we address forfeited arguments is left to our discretion.").

15

¶27 First, T.H. contends that because the CPS records "pertain to the same facts at issue in the criminal case," his constitutional right to present a complete defense outweighs society's interest in maintaining the confidentiality of the records "as a matter of law." In support, he cites ***Davis v. Alaska***, 415 U.S. 308, 319 (1974), in which the United States Supreme Court rejected Alaska's contention that its interest in maintaining the confidentiality of a witness's prior juvenile record was outweighed by Davis's confrontation right under the Sixth Amendment[6] to cross-examine the witness about his record to suggest that he was biased.

¶28 This argument is fundamentally at odds with the balancing test required under ***Herget***. Requiring disclosure as a matter of law any time a criminal defendant seeks juvenile records that purport to support a defense would eliminate the need for any balancing of interests and subordinate the juvenile's interest in confidentiality. Both results are contrary to Wisconsin law. In ***Herget***, 84 Wis. 2d at 451-52, the supreme court recognized a "strong public interest" in WIS. STAT. § 48.78 and related provisions "in promoting the best interests of the child and the administration of the juvenile justice system by protecting the confidentiality of … social agency records relating to juveniles." Even in cases where a criminal defendant seeks disclosure or *in camera* review of juvenile records, Wisconsin courts must still balance the strong interest in confidentiality against "the exigencies of the circumstances." ***Herget***, 84 Wis. 2d at 452. The defendant's right to present a defense does not exist outside the balancing analysis; rather, the defendant's need for juvenile records to present a defense is considered

---

[6] U.S. CONST. amend VI.

in the balancing analysis because the defendant must explain to the juvenile court "any hardship to the requesting individual should the discovery order not issue." *See **Bellows***, 218 Wis. 2d at 630. The impact of nondisclosure on the defendant's constitutional rights in a criminal proceeding is simply one factor the juvenile court must consider, not the dispositive factor that will always prevail as a matter of law.

¶29 T.H.'s other argument is that the Department records he sought contain "exculpatory and impeachment evidence," and thus he would be entitled to them under ***Brady v. Maryland***, 373 U.S. 83 (1963) and ***Kyles v. Whitley***, 514 U.S. 419 (1995), as well as Wisconsin's criminal discovery statute, WIS. STAT. § 971.23, even if he had not filed a ***Bellows*** motion. Specifically, T.H. points to statements in the records "by the Department that the methods utilized by T.H. were not thought to be concerning or inappropriate at the time of their use, and that the children exhibited positive behavioral changes in response to these methods." The State's obligation to turn over these records, in T.H.'s view, "overrides" the ***Bellows*** criteria that examines efforts to obtain the requested information from other sources.

¶30 This argument fails for three reasons. First, T.H. has not explained how raising a ***Brady*** challenge in this proceeding is appropriate. In addition, T.H. has not shown that the prosecutor responsible for his criminal case or any law enforcement officer involved in the investigation of Evan's death had possession or even knowledge of the CPS records. Nor has T.H. offered anything to suggest that CPS has had any involvement in the investigation of Evan's death or the criminal charges against T.H. This is important because, as a case cited by T.H. recognizes, ***Brady***'s disclosure obligation "is limited to that information which is then known to the government" and does not require a prosecutor "to learn of

information possessed by other government agencies that have no involvement in the investigation or prosecution at issue." *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996). Similarly, our supreme court has stated only that the State's disclosure obligation under WIS. STAT. § 971.23 "*may* extend to information in the possession of law enforcement agencies but not personally known to the prosecutor." *State v. DeLao*, 2002 WI 49, ¶21, 252 Wis. 2d 289, 643 N.W.2d 480 (emphasis added). Nothing in T.H.'s *Bellows* motion suggests that the prosecuting attorneys or law enforcement officials involved in his criminal case possess or even are aware of the CPS records. Thus, he has not shown that the records are subject to disclosure under *Brady* or § 971.23.

¶31 Finally, under *Brady*, the State must turn over to a defendant evidence that is material to either guilt or punishment. *State v. Harris*, 2004 WI 64, ¶12, 272 Wis. 2d 80, 680 N.W.2d 737. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*, ¶14 (citation omitted). WISCONSIN STAT. § 971.23(1)(h) similarly requires a district attorney to disclose upon demand "[a]ny exculpatory evidence." This court has already explained why the information T.H. seeks in the records is not relevant to his reasonable discipline defense. Because the information is not relevant, it is not material for the purpose of *Brady* or exculpatory evidence subject to disclosure under § 971.23(1)(h).

¶32 For these reasons, this court rejects T.H.'s arguments and concludes that the juvenile court did not erroneously exercise its discretion in denying his *Bellows* motion.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.